Joseph H. Hubbard and Essie Hubbard v. Commissioner.
Joseph H. Hubbard & Hubbard v. Commissioner
Docket No. 31315.
United States Tax Court
1952 Tax Ct. Memo LEXIS 78; 11 T.C.M. (CCH) 958; T.C.M. (RIA) 52287; September 26, 1952
*78 Wentworth T. Durant, Esq., 601 Mercantile Securities Bldg., Dallas, Tex., and Robert J. Hobby, Esq., for the petitioners. W. B. Riley, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency in income tax for the year 1948 in the amount of $112.20. This deficiency is in dispute, and petitioners also claim an overpayment for that year in the amount of $4,472.42. The issues presented are (1) whether respondent has properly disallowed a refund claim based on an ordinary business loss, and (2) has respondent properly disallowed a bad debt deduction in the amount of $375. Findings of Fact Joseph H. Hubbard and Essie Hubbard, husband and wife, are residents of Texas. They filed a joint return for the calendar year 1948 with the collector of internal revenue for the second district of Texas. Issue 1 Petitioner Joseph H. Hubbard for many years prior to 1948 was engaged in the business of manufacturing and selling heating units and stoves; he operated his businesses as proprietorships and partnerships. In 1945 Joseph H. Hubbard, his wife and their son, Leslie Hubbard, formed a partnership known *79 as the Leslie Manufacturing Company. The petitioners each held a 25 per cent interest; their son held the other 50 per cent. Leslie Manufacturing Company engaged in the manufacture and sale of gas stoves and gas stove accessories. The partnership filed a partnership return for the fiscal year ended March 31, 1948, and the return showed the aggregate distributive income for the petitioners to be $17,685.65 for the 11-month period covered by the return. This sum was reported as income by petitioners on their individual 1948 income tax return. On March 1, 1948, the Leslie Manufacturing Company, a corporation, was organized by petitioners and their son. All assets of the prior partnership were transferred to the corporation and all liabilities of the partnership were assumed by the new corporation. The corporation was capitalized at $50,000. Petitioners together held 50 per cent of the corporate stock; their son held the other 50 per cent. The partnership balance sheet as of February 29, 1948, is as follows: ASSETS
Current assets: Cash
$ 7,276.69
Accounts receivable
19,034.48
Inventory
32,947.77
Other assets
1,289.89
Equipment
71,239.92
Prepaid insurance
505.39
$132,294.14
LIABILITIES
Current liabilities: Notes payable
$ 4,607.60
Accounts payable and accrued accounts
43,400.27
Estimated federal income tax of
partners
8,184.29
Partners' capital accounts
76,101.98
$132,294.14
*80 A breakdown of the partners' capital account is as follows: Eleven months ended February 29, 1948.
L.S.
J.H.
Essie
Total
Hubbard
Hubbard
Hubbard
Balance March 31, 1947
$50,191.58
$21,113.35
$14,539.12
$14,539.11
Add net income for the eleven months ended
Feb. 29, 1948
27,187.01
12,827.96
7,179.52
7,179.53
77,378.59
33,941.31
21,718.64
21,718.64
Deduct drawings
1,276.61
1,151.13
(905.66)
1,031.14
Balance February 29, 1948
$76,101.98
$32,790.18
$22,624.30
$20,687.50x When the corporation was organized on March 1, 1948, the interest petitioner and his wife held in the partnership was reflected on the corporate balance sheet as follows: $25,000 in stock; $4,472.42 as "Due to stockholders - current", and $18,311.80 as "Deferred liabilities: Due to stockholders". These three accounts aggregated $47,784.22. At the time of dissolution of the partnership the capital accounts of the petitioner and his wife totaled $43,311.80. In addition, provision was made for the payment of accrued income taxes in the amount of $4,472.42, so that the total proprietary interest of petitioners in the partnership was $47,784.22. The Leslie Manufacturing Company, a corporation, filed its income tax return for the fiscal year ended February 28, 1949, with the collector of internal revenue for the second district of Texas. Between March 1, 1948, and December 31, 1948, a great many law suits were filed against the corporation by creditors who were unable to collect their debts otherwise. On June 13, 1949, the corporation was placed in receivership by the United States District Court for the Northern District of Texas, Dallas Division. On October 15, 1949, an acceptable plan for reorganization was submitted by the debtor. This plan provided that a new corporation known as the Southwestern Enameling Company be organized to purchase the assets of the bankrupt corporation. The plan provided for the payment of all secured claims, and partial payment of unsecured claims against the corporation. However, the plan also included a specific waiver by the shareholders of any payments on their claims. The corporation was subsequently discharged from bankruptcy. Issue 2 During the early part of 1947 petitioner Hubbard, operating a stove business as J. H. Hubbard and Son, a sole proprietorship, made various sales on credit. The business was sold in the early part of 1947, but some of the accounts receivable were retained by him. Included in these accounts was one for $375. In 1948, he sought to collect this $375 debt but was unsuccessful. After some negotiation with the debtor, and with the account still unpaid, he turned it over to an attorney for collection. Later the attorney advised petitioner Hubbard that the debt could not be collected and that it should be written off. Petitioner wrote this bad debt off in 1948 and the $375 was reported as a business deduction on petitioners' 1948 individual return. Opinion Issue 1 Petitioners contend that they were members of a partnership which was dissolved on February 29, 1948, and that on that date they had in their name partnership capital accounts in the amount of $76,101.98, which represented their investment, plus accumulated earnings of the partnership. They also contend that on March 1, 1948, a corporation was established which took over the business of the partnership, including all assets and liabilities. They maintain that the corporation had a capitalization of $50,000 and that the excess of $50,000 in the partnership capital account was transferred to the corporate books as accounts payable to the petitioners. Continuing, they allege that the excess over $50,000 in the partnership capital account was actually loaned to the corporation and that these alleged loans became worthless and uncollectible in 1948 and were therefore deductible by the petitioners as ordinary business losses on their individual return under the provisions of section 23(k)-1, I.R.C. The respondent contends that these alleged loans to the corporation by petitioners, who were stockholders, at the time of incorporation were not loans in reality but were part of the original capital investment. in the alternative, in the event that we hold that the transactions created a debtorcreditor relationship, respondent maintains that the claimed deductions are not allowable in 1948 because the petitioners have not established that the debts became worthless in that year. As a second alternative, in the event that we hold that the transactions were loans and hence debts which became worthless in 1948, the respondent maintains that the transactions resulted in nonbusiness bad debts under the provisions of section 23(k)-4. We think that the gist of the issue is whether there was in fact an indebtedness between the corporation and the petitioners. This is the primary question and the proposition as contended for by petitioners in their brief that they were in business of financing other businesses need only be considered if we find there is a debtorcreditor relationship between petitioners and the corporation. Whether a stockholder's advance of funds to his corporation is to be deemed a capital contribution or a loan is not a new question. See Sam Schnitzer, 13 T.C. 43, 60; affd., 183 Fed. (2d) 70, for extensive citations on this issue. In Cohen v. Commissioner, 148 Fed. (2d) 336, affirming Memorandum Opinion of the Tax Court, it was held that the question of whether a payment was a capital contribution or a loan is a question of fact. In the Schnitzer case, p. 60, we pointed out that bookkeeping, form, and the parties' expression of intent, or character, the expectation of repayment, the relations of advances to stockholders and the adequacy of corporate capital previously invested are among the circumstances properly considered in resolving this question of fact. When we analyze the corporate structure of the corporation as of March 1, 1948, we see that the entire partnership capital account was transferred to the corporation. The petitioner's interests were reflected in $25,000 worth of stock, $4,472.42 as "Due to stockholders - current" and $18,311.80 as "Deferred liabilities: Due to stockholders". The entire amount was transferred because the new corporation needed the money in its business activities. But considering that the money was essential in the business, there has been no adequate explanation for limiting the capital stock to $50,000 and accounting for the balance transferred as alleged debts to the petitioners. The opening balance sheet of the corporation, together with some testimony presented at the hearing, is superficial evidence that the excess of $50,000 transferred to the partnership capital account was loaned to the corporation, but it is not conclusive when viewed with the record as a whole. The fact that the losses arose from transactions with a family corporation which itself sprung from a family partnership militates against the theory of arm's-length transactions. Petitioner Hubbard was not a lender of money even though he had in the past 20 years organized various stove businesses. We know of no notes, bonds or any other evidence of indebtedness. No provision was made for the payment of interest. In fact the testimony was to the effect that the petitioners never asked for interest; they never looked for it. No date of payment was fixed for the alleged loans. No security was pledged, even though petitioners knew the weaknesses of the financial structure of the corporation. On the other hand, there is convincing evidence that these sums were capital contributions rather than loans. Petitioners as shareholders held half of the capital stock; their son held the other half. In Fred A. Bihlmaier, 17 T.C. 620, we held that alleged loans to a hopelessly insolvent corporation were in truth additional capital contributions to the corporation. The petitioners' corporation was not hopelessly insolvent. However, the evidence indicates that petitioners left their share of the partnership income in the partnership business because it was needed for business activities. There is no evidence to indicate that an enigmatic change altered this situation when the partnership business was transferred to the corporation. By analogy with the Bihlmaier case, the petitioners' transfer of money to the corporation was in the nature of capital contributions. We think that the accepted plan of reorganization for the bankrupt corporation supports the capitalization theory rather than the loan theory. The plan provided that the three Hubbards, as unsecured creditors, would waive payment of their unsecured claims. This appears to be completely inconsistent with the fact that all of the other unsecured creditors received a percentage of the allowed amounts of their claims. The petitioners and their son were the only ones excluded by the reorganization plan. In our opinion, without captious reasoning, their exclusion from the reorganization plan further supports the capital contribution theory. From the record as a whole we find that the alleged loans were in fact capital contributions and that the petitioners were not entitled to bad debt deductions as set forth in their claim for refund; the respondent is sustained on this issue. Our determination on this matter precludes the necessity of a discussion on the alternate issues. Issue 2 Our finding of facts as to this issue is determinative of the issue. We find and so hold that in 1948 a business debt in the amount of $375, which was owed to petitioner Hubbard, became worthless. Therefore, under section 23(k)-1 of the Code, petitioner is entitled to a bad debt deduction in the amount of $375. Decision will be entered under Rule 50. *81