Anne Klein Ansley v. Commissioner. Arthur C. Ansley v. Commissioner.
Ansley v. Commissioner
Docket Nos. 35938, 35939.
United States Tax Court
1953 Tax Ct. Memo LEXIS 101; 12 T.C.M. (CCH) 1110; T.C.M. (RIA) 53323; September 30, 1953
Victor R. Wolder, Esq., 347 Madison Avenue, New York, N. Y., for the petitioners. Max J. Hamburger, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income taxes for the years and in the amounts as follows: Anne Klein Ansley
1945
$ 267.55
1947
305.80
Arthur C. Ansley
1945
7,115.16
1946
3,236.97
1947
1,319.90
The issues are (1) whether Arthur C. Ansley is entitled to a deduction of the sum *102 of $28,931.59 in the taxable year 1947 as a business bad debt or as a loss incurred in a trade or business; (2) whether Arthur C. Ansley is entitled to a net operating loss carry-back from 1947 to 1945, based on the alleged bad debt of $28,931.59; (3) whether Arthur C. Ansley is entitled to deduct the sum of $798.34 in the year 1948 as a business expense incurred in the operation of a farm; (4) whether Arthur C. Ansley is entitled to a net operating loss carry-back from 1948 to 1946, based on the alleged expense deduction in the amount of $798.34; (5) whether Anne Klein Ansley is entitled to a deduction as business expenses of the sum of $3,133.89 in the taxable year 1947; (6) whether Anne Klein Ansley is entitled to a net operating loss carry-back from 1947 to 1945, based on the alleged business expense deduction claim of $3,133.89; and (7) whether the stock of the Ansley Radio Corporation became worthless in the taxable year 1947. This issue is common to both petitioners. The facts stipulated are found accordingly. Findings of Fact Petitioners Arthur C. Ansley and Anne Klein Ansley are husband and wife residing in Doylestown, Pennsylvania. For the calendar years 1945, 1946, *103 and 1947, Arthur C. Ansley filed individual income tax returns with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. For the calendar year 1945 Anne Klein Ansley filed her individual income tax return with the collector of internal revenue for the first district of New Jersey, at Camden, and for the year 1947 she filed her return with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. Arthur C. Ansley has been active in the radio and phonograph business since 1927. From a small individually operated repair shop he gradually expanded his operations into the field of manufacturing custom-made sets. In 1932 the business was incorporated under the laws of the State of New York as the Ansley Radio Corporation, hereinafter referred to as the Corporation, with its principal place of business in New York, New York, where it continued to do business until 1945. During this period the Corporation greatly expanded and at the outset of World War II its volume of business was approximately $1,750,000 annually, when it had some 250 employees. The business was moved to Trenton, New Jersey, in the latter part of *104 1945. In 1946 a New Jersey corporation was formed under the same name, and on September 30, 1946, all of the assets and liabilities of the New York corporation were transferred to it. The petitioners exchanged their stock for stock in the New Jersey corporation. The issued and outstanding shares of the Corporation consisted of 294,643 common and 13,700 preferred. Arthur C. Ansley held 275,000 shares of common and 3,464 shares of preferred and Anne Klein Ansley held 2,806 shares of common and 1,534 shares of preferred. Arthur C. Ansley served at all times as president and general manager and as a director of both the New York and New Jersey corporations and during their legal existence devoted his entire time to the affairs thereof. Prior to 1946 Ansley occasionally was required to endorse the notes for loans to the Corporation. He also personally advanced funds when needed to expand its inventory. The amounts advanced varied from $1,000 in 1933 to $5,000 in 1939. All of the loans made by him were repaid in cash, with interest, but in several instances he accepted preferred stock in lieu of cash. At no time was he required to make any payments by reason of having endorsed the Corporation's *105 notes. On May 21, 1946, the First Mechanics National Bank of Trenton, New Jersey, hereinafter referred to as the Bank, made a loan to Arthur C. Ansley in the amount of $28,000, which was secured by United States Treasury 2 1/2 per cent bonds in the face amount of $30,000. The rate of interest thereon was 2 per cent. In turn, Ansley made a loan to the Corporation of $30,000. at 5 per cent interest. In June 1946 a public stock issue was planned by the Corporation as a method of raising additional working capital. Rather than continuing to have the Corporation borrow funds from its president and majority stockholder, the Bank loaned directly to the Corporation the sum of $30,000, at 2 per cent interest. Simultaneously, there was an understanding between the Corporation and Ansley that the latter was to receive an additional 3 per cent interest for posting his bonds as collateral security on the loan. The bonds were to be returned to Ansley as soon as corporate funds were available to retire the note to the Bank. Thereupon, the Bank cancelled and returned to Ansley his two original notes, each in the amount of $14,000, which together with interest, totaled $28,027.99. The $30,000 United *106 States Treasury bonds previously posted by Ansley were continued to be held by the Bank as security for the loan to the Corporation. After the New Jersey corporation was organized in 1946 certain unfavorable business conditions developed. On February 20, 1947, the Corporation filed a petitioner in the District Court of the United States for the District of New Jersey for reorganization under chapter 10 of the Bankruptcy Act. This petition was approved and Arthur C. Ansley was appointed operating trustee of the Corporation at an annual salary of $10,000. On July 3, 1947, after having demanded payment of its loan of $30,000 and the Corporation having failed to make payment, the Bank, with Ansley's authorization, sold the collateral for $31,015.96 and applied the proceeds against the corporate debt to the Bank, crediting the excess of $1,068.41 to Ansley's individual account. At the same time the Bank endorsed, without recourse and without warranty, the note which the Corporation executed in favor of the Bank in June 1946 and delivered it to Ansley. During the latter part of 1947 numerous discussions were had between Ansley, as operating trustee, Bernard L. Green, the disinterested *107 trustee, and the creditors' committee, representing the Corporation's unsecured creditors, with regard to the financial condition of the Corporation and to work out a suitable plan of reorganization. In September of that year the creditors' committee refused to consider a plan which provided for settlement of claims at 12 1/2" per dollar. On July 15, 1947, an agreement was entered into between Ansley, in his individual capacity, and the creditors' committee under the bankruptcy proceeding. The agreement provided that in consideration of the committee refraining from taking immediate steps to liquidate the Corporation, Ansley's claim against the Corporation in the total amount of $30,000 would be reduced by the amount of any business losses sustained by the Corporation during the period July 15, 1947, to October 31, 1947. However, no claim could be asserted against Ansley individually for losses in excess of $30,000. During the period July 15, 1947, to October 31, 1947, the Corporation sustained losses within the purview of the July 15, 1947, agreement in excess of $30,000.
Although there was a general feeling of pessimism on the part of the trustees during November and December *108 1947 with respect to the Corporation's financial position, the trustees continued to operate the Corporation throughout the year because it was manufacturing an electronic piano, a new development which was unique in the trade. It was believed that the electronic piano provided a hopeful means of restoring the Corporation to normal business operations, despite the generally depressed conditions in the radio industry due to the advent of television. For the six months ended December 31, 1947, the Corporation had a net operating loss of $74,679.63. On January 8, 1948, the creditors' committee made the final decision to request liquidation of the Corporation. At a formal hearing held on February 16, 1948, before the United States District Court, the Corporation was adjudicated a bankrupt. The book value of the assets, liabilities, and net worth of the Corporation during the periods set forth were as follows: 2-28-47
12-31-47
2-16-48
Assets
$644,173.33
$539,478.17
$528,690.09
Liabilities
419,851.94
475,270.02
479,005.29
Corporate net worth
$224,321.39
$ 64,208.15
$ 49,684.80
Arthur C. Ansley continued as operating trustee and Anne Klein Ansley *109 continued as sales representative of the Corporation until February 9, 1948. In the bankrupcy liquidation proceedings the assets of the Corporation were insufficient to pay priority claims in full and no sums were ever paid to the general creditors, including Ansley. Petitioner Arthur C. Ansley has not carried his burden of establishing that he sustained in the taxable year 1947 a bad debt loss that became worthless in that year, or a loss incurred in carrying on a trade or business in the amount of $28,931.59, or in any other amount. In 1948, after the Corporation was adjudicated a bankrupt, Ansley commenced the manufacture of custom-made radios in one of the buildings located on premises which he occupied as his residence at Doylestown, Pennsylvania. These premises consisted of 22 acres, and in addition to his manufacturing business Ansley purchased equipment and commenced cultivation of the land. While no income was derived from the farming operations in 1948 profits were realized from the sale of crops in 1949, and subsequent years. In 1948 Ansley sustained operating losses in both his undertakings. In connection with the operations of the farm he expended the sum of $798.34 *110 for the following purposes: Seeds and plants
$150.25
Miscellaneous taxes: License for tractor
$16.00
Taxes on farm property
45.57
61.57
Freight and cartage
5.76
Repairs, replacements, small tools
31.33
Lime and fertilizer
234.01
Gas and oil for tractor
20.51
Insurance on tractor
20.51
Insurance on tractor
12.24
Labor and machine hire
(combining soy beans)
48.00
Depreciation on farm equipment
234.67
$798.34
On his amended return for the year 1948 Ansley claimed a total net operating loss of $6,822.42, which amount included a claimed operating farm loss of $798.34. The respondent adjusted the loss for carry-back purposes to $1,785.34, disallowing the claimed farm loss in full. During the taxable year 1948 Arthur C. Ansley was engaged in the business of farming. In 1948 he incurred and paid the sum of $798.34, which constituted ordinary and necessary expenses in carrying on his farming operations. Prior to and throughout the taxable year 1947, petitioner Anne Klein Ansley was the sales representative for Ansley Radio Corporation for the metropolitan area of New York City. Her compensation was derived soely from commissions *111 on sales. She paid all expenses incurred in making sales and was not reimbursed therefor by the Corporation. As a part of its retrenchment program the Corporation discontinued its showroom in New York City. During 1947 the showroom was maintained in an apartment rented by Anne Klein Ansley in Forest Hills, Long Island, New York, from which she conducted her sales activities. During the year 1947 Anne Klein Ansley and her husband lived at Doylestown, Pennsylvania. On Monday morning she traveled to Forest Hills, where she pursued her sales activities until Friday, when she returned to Doylestown, Pennsylvania. During the year 1947 Anne Klein Ansley made three or four trips to New England cities, each lasting four or five days, to confer with other sales representatives of the Corporation. On her individual tax return for the taxable year 1947, Anne Klein Ansley claimed the sum of $3,133.89, as business expenses incurred as sales representative, for which she received no reimbursement. Of the total amount claimed the sum of $281.01, representing telephone expenses, was allowed in full. The amount of $750, claimed for travel and entertainment expense, was allowed to the extent of *112 50 per cent, or $375. Of the balance of $2,102.88, the respondent allowed the amount of $600 as rental for the use of the apartment as a showroom but disallowed the remainder, or $1,502.88, representing expenditures for meals and lodging while away from home. Petitioner Anne Klein Ansley has failed to establish that in the taxable year 1947 she incurred and paid, as sales representative, expenses in excess of the amounts allowed by the respondent. In the taxable year 1947 Anne Klein Ansley was not engaged in the operation of a trade or business within the purview of section 122 of the Internal Revenue Code. The petitioners have failed to establish that the capital stock of the Ansley Radio Corporation became worthless in the taxable year 1947. Opinion LeMIRE, J.: The first question presented is whether Arthur C. Ansley is entitled to a deduction of the sum of $28,931.59 in the taxable year 1947. That the petitioner sustained a loss in the amount claimed is not disputed. The petitioner contends that the loss is deductible as a business bad debt under section 23 (k) (1), or, in the alternative, under section 23 (e) (1) and (2) of the Internal Revenue Code *113 . The respondent's position is that the loss qualifies as a nonbusiness bad debt and, in any event, the evidence does not establish that it became worthless in the taxable year 1947. Since section 23 (k) (1), dealing with bad debts, and section 23 (e), covering losses generally, are mutually exclusive, Spring City [Foundry] Co. v. Commissioner, 292 U.S. 182, it becomes necessary to examine the nature of the transaction out of which the loss arises, F. Sitterding, Jr., 20 T.C. 130 (April 21, 1953). The record shows that the loss arose out of a loan made by Ansley to the Ansley Radio Corporation constituting a debt, and the provisions of section 23 (k) govern its deductibility. Arthur C. Ansley was president, director, and general manager of the Corporation, owing 95 per cent of its common stock and a considerable amount of preferred stock. Over the years of the Corporation's existence he had frequently advanced moneys by way of loans and had endorsed the notes given by the Corporation. All loans made by the Corporation had been discharged by it prior to the 1946 loan in question. On May 21, 1946, Ansley individually obtained a bank loan in the amount of *114 $28,000, which he secured by depositing as collateral United States Treasury bonds in the face amount of $30,000. Thereupon, Ansley loaned $30,000 to the Corporation. In June 1946, the Bank loaned to the Corporation the sum of $30,000, which the Corporation used to pay its debt to Ansley. As a condition to the Bank making the loan direct to the Corporation, Ansley permitted the collateral given to secure his individual loan to remain as collateral security for the Bank's loan to the Corporation. On July 3, 1947, the Corporation defaulted and Ansley consented to the sale of the collateral. The proceeds were applied to the payment of the Corporation's note and the excess amount of $1,068.41 was credited to Ansley's individual account. The Corporation's note was thereupon delivered to Ansley. On February 16, 1948, the Corporation was adjudged a bankrupt and Ansley never received anything on his claim in the amount of $28,931.59. In support of his contention that he sustained a business bad debt loss, Ansley argues that because of his advances to the Corporation from time to time, and his frequent endorsement of its notes, he was in the business of financing a corporate venture and the *115 loss resulted from the operation of that business. Under the facts revealed by this record the contention is without merit. A corporation is a separate legal entity and not the business of its majority stockholder, officer, and director. Burnet v. Clark, 287 U.S. 410. This record contains no evidence that Ansley made loans or financed other corporations or businesses. The evidence shows that the last loan prior to the 1946 loan in question was made in 1939. It is a wellestablished rule that where an officer and majority stockholder lends money to the corporation to which he devotes his full time the debt thus incurred is not deductible as a business bad debt. Omaha Nat. Bank v. Commissioner, 183 Fed. (2d) 899; Fred A. Bihlmaier, 17 T.C. 620. We hold that the loss was not incurred in Arthur C. Ansley's trade or business. The further contention of Ansley, that the subordination agreement of July 15, 1947, with the unsecured creditors had the effect of converting the loan transaction into one entered into for profit and, hence, the loss is one deductible under section 23 (e) of the Code, is without merit. Cf. F. Sitterding, Jr., supra. *116 In our opinion the loss claimed by petitioner in 1947 is deductible, if at all, as a nonbusiness bad debt. However, the burden is upon Ansley to establish the occurrence during the taxable year 1497 of some identifiable event tending to establish the worthlessness of the debt in that year. F. Sitterding, Jr. supra. We do not think this burden has been met. When a reorganization proceeding under the Bankruptcy Act was instituted on February 28, 1947, the Corporation had assets of $644,173.33 and its liabilities were $419,851.94. At the end of the taxable year 1947 its net worth, as shown by its books, was $64,208.15. It is argued that the book value of the assets was considerably in excess of their fair market value. In the absence of any appraisal or other evidence to establish the fair market value of the assets the book value constitutes the best evidence. The fact that upon final liquidation in 1948 there were no funds available for unsecured creditors does not establish that the market value of the assets at the end of the year 1947 was less than their book value. In our opinion, the record contains no evidence of any identifiable event tending to establish worthlessness *117 of the debt other than the adjudication of the Corporation as a bankrupt on February 16, 1948. We, therefore, hold that petitioner, Arthur C. Ansley, has failed to establish that his debt in the amount of $28,931.59 became worthless in the taxable year 1947, and the respondent's disallowance of the claimed deduction of the sum of $28,931.59 in the taxable year 1947 is sustained. The second question as to whether Arthur C. Ansley is entitled to a net operating loss carry-back from 1947 to 1945, based on the alleged loss of $28,931.59, is rendered moot in view of holding that he has failed to establish that such loss occurred in the taxable year 1947. The third question presented is whether Arthur C. Ansley sustained a loss in 1948 in the amount of $798.34 from the operation of a farm, thereby entitling him to an increased net operating loss carry-back of such amount to the taxable year 1946. In his amended return for 1948, for which year no deficiency was determined, Ansley claimed a total net operating loss from the operations of his radio business and a farm in the amount of $6,822.42. The respondent adjusted the alleged loss for carry-back purposes to the amount of $1,785.34. *118 Among the disallowed items was the sum of $798.34, claimed as a loss from the operations of a farm. The individual items, totaling $798.34, appear to constitute ordinary and necessary business expenses, and the question for our determination is whether in the year 1948 Ansley was engaged in the operation of the farm for profit. In 1941 Ansley and his wife purchased a plot of about 22 acres in Doylestown, Pennsylvania. Until 1946 the land was not cultivated but was occupied as their summer residence. In 1946, when the Ansley Radio Corporation was moved from New York to Trenton, the Doylestown property became their permanent home. After the liquidation of the Corporation Ansley commenced the manufacture of custom-made radios in a building on the Doylestown property. He purchased a tractor and commenced farming activities. While no income was received from the operations of the farm in 1948, a small profit was realized in subsequent years. The evidence pertaining to the farming activities is rather meager but, nevertheless, since his principal business of manufacturing custom-made radios was not profitable, we are persuaded that the farming activities were conducted with a view toward *119 realization of profit and not merely as a hobby for recreation. We, therefore, hold upon this record that Arthur C. Ansley has established that the respondent erred in reducing the net operating loss carry-back from 1948 to the taxable year 1946 by the disallowance of the loss of $798.34 from the farming operations carried on in 1948. The fourth question presented is whether the petitioner, Anne Klein Ansley, is entitled to deduct the amount of $3,133.89 in the taxable year 1947 as business expenses incurred and paid in connection with her activities as sales representative. The contested items in the claimed deduction of $3,133.89 relate to the disallowance of 50 per cent of the amount of $750 claimed as representing travel and entertainment expenses. The record shows that the sum of $750 was an estimated amount which Anne Klein Ansley was unable to substantiate by vouchers or records. On the basis of her evidence we are convinced that the respondent's allowance of $375 for travel and entertainment expenditures is fair and reasonable. Under the rationale of Cohan v. Commissioner, 39 Fed. (2d) 540, we hold that Anne Klein Ansley is entitled to deduct the sum of $375, *120 representing travel and entertainment expenditures, as business expenses incurred in the production of income. The remaining contested item involves the sum of $1,502.88, representing meals and lodging while away from home. During the year 1947 Anne Klein Ansley's home was in Doylestown, Pennsylvania. The location of her employment, as sales representative, was in Forest Hills, New York. It has been repeatedly held that the word "home," within the purview of sections 22 (n) (2) and 23 (a) (1) (A) of the Internal Revenue Code, means the principal place of business or post of employment, and a taxpayer may not keep his residence at a place where he is not engaged in a trade or business and take a deduction for meals, lodging, and travel expenses while away from there. Raymond E. Kershner, 14 T.C. 168; Barnhill v. Commissioner, 148 Fed. (2d) 913. We, therefore, hold that the respondent properly disallowed the amount of $1,502.88, representing expenditures for meals and lodging incurred by Anne Klein Ansley as sales representative while stationed at Forest Hills, New York, during the year 1947. The next question presented is whether *121 Anne Klein Ansley is entitled to a net operating loss carry-back from 1947 to 1945, based upon the deductions claimed in the amount of $3,133.89. Section 23 (s) of the Internal Revenue Code provides for the deduction of a net operating loss computed as provided in section 122 of the Code. In order to be entitled to a net operating loss deduction, the evidence must show that the loss was sustained in the operation of a business regularly carried on in the taxable year. Since the record establishes that the claimed deductions were expenses incurred in connection with the employment of Anne Klein Ansley as a sales representative and not in any business which she regularly carried on, the loss sustained does not give rise to a net operating loss deduction. Sogg v. Commissioner, 194 Fed. (d) 540, affirming per curiam a memorandum opinion entered October 4, 1950 [9 TCM 927,]. The claim of Anne Klein Ansley for a net operating loss carry-back from 1947 to 1945 is denied. The final question presented, which is common to both petitioners, is whether they are entitled to a long-term capital loss in the taxable year 1947, based on the worthlessness *122 of the capital stock of Ansley Radio Corporation. There is no dispute that the Corporation was adjudged a bankrupt on February 28, 1948, and upon final liquidation the assets were insufficient to pay any amount to the unsecured creditors. Hence, the question here is narrowed to the factual one as to whether the petitioners have carried their burden of establishing the worthlessness of the stock in the prior year 1947. We are of the opinion that the petitioners have not established the fact that this stock became worthless in the year 1947. The Corporation was operating throughout that year and both petitioners were receiving compensation as employees thereof. While it is obvious that the stock was without substantial value at the end of 1947, the book assets exceeded its liabilities and insolvency was not established. Our discussion in connection with the first issue as to the worthlessness in 1947 of the debt owing to petitioner Arthur C. Ansley is pertinent to this issue, and is referred to as showing that worthlessness, which the regulations require to permit the taking of a deduction for loss, has not been established as having occurred in the taxable year 1947. On this issue we *123 sustain the respondent. Decision will be entered for the respondent in Docket No. 35938. Decision will be entered under Rule 50 in Docket No. 35939.