## ATKINS' ESTATE v. LUCAS, Commissioner of Internal Revenue.

Court of Appeals of District of Columbia.
Submitted October 16, 1929.
Decided December 2, 1929.

No. 4842.

Walter E. Barton, of Washington, D. C., and W. S. Wilkinson, of Shreveport, La., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., C. M. Charest, V. J. Heffernan, and Sewall Key, all of Washington, D. C., and Morton P. Fisher, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The decision herein appealed from is reported in 9 B. T. A. 140. It involves income taxes for the years 1919 and 1920 in the respective amounts of $41,513.11 and $1,293.09.

It appears that the Caddo Oil & Refining Company, a Louisiana corporation, was organized in the year 1916, with capital stock of $10,000,000, divided into 100,000 shares, of the par value of $100 each. The deceased, John B. Atkins, was one of the organizers of

the company, and transferred certain property to it, for which he received 8,328 shares of its capital stock. The stock, when received by Atkins, had a market value of $20 per share. Atkins at the same time owned a one-half interest in an oil lease known as the Noel lease. The other half interest therein was owned by the corporation. Atkins also owned a patented gasoline refining process, known as the Christman process, which was leased to the corporation upon a royalty basis. The record fails to disclose the cost of the property which Atkins transferred to the corporation as a consideration for the stock received by him. It appears, however, that his interest in the Noel lease cost him $74,-828.95 net in 1919, and that the Christman process had cost him nothing.

In the year 1919 the corporation was in need of additional funds, and it entered into negotiations with certain Philadelphia bankers for a reorganization of the business. As a result of this a New York corporation was organized, entitled the Caddo Central Refining Corporation, with capital stock of $15,-000,000, divided into 150,000 shares, of the par value of $100 each. The New York corporation took over all of the assets of the old corporation, and assumed all of its obligations, including a first mortgage upon the properties taken over, in the amount of $2,-122,000. In May, 1919, the stockholders of the old corporation transferred their stock to the New York corporation, and all of them, except Atkins, were paid for their stock at the rate of $35 per share, in bonds issued by the corporation, which were received at par. Atkins, however, entered into a special arrangement whereby he transferred his stock to the New York corporation, and also his interest in the Noel lease and the Christman process. He received $15 per share in bonds at par for his stock, amounting to $124,920, and $85,000 in cash, together with $100,000 in bonds at par, for his interest in the Noel lease, and $200,000 in bonds at par for the Christman process.

The bonds thus transferred were part of an issue of bonds by the New York corporation in the aggregate amount of $5,378,800, known as the first consolidated mortgage ten-year sinking fund 6 per cent. gold bonds, payable January 1, 1930, secured by mortgage upon the properties taken over from the old corporation, and also by a first mortgage upon certain other properties to be acquired subsequently by the New York corporation. At the time of the transfer these bonds had a market value of 64.43 cents on the dollar.

When Atkins made his income tax return for 1919, he reported the receipt of the $85,-000 which had been paid to him in cash, but made no return of the corporation bonds which he had received in the transaction. It is claimed that he was not required to report the bonds, inasmuch as he reported his income upon the cash and disbursement basis, whereas the bonds were payable at a future date subsequent to the taxable year.

The Commissioner of Internal Revenue, however, determined that there was a deficiency in the return, and made the following additions to gross income, to wit: $124,920 as profit received by Atkins in the sale of his stock in the old corporation; also $65,000 as profit in the sale of the Noel lease, and $130,-000 as profit in the sale of the Christman process. The Commissioner also disallowed a deduction in the sum of $1,836.86 in the year 1919, and $1,826.36 in the year 1920, claimed as depreciation on a certain oil lease known as the Atkins-Cooney lease and the equipment thereon, and also disallowed a deduction of $10,500 claimed as a loss in 1920 on decedent's investment in certain Commercial Oil Company stock.

An appeal was taken on behalf of Atkins' estate to the Board of Tax Appeals.

The board sustained the Commissioner's determination of profit on the Noel lease and the Christman process, but held that under section 202(b), Revenue Act of 1918, 40 Stat. 1057, 1060, no profit should be recognized upon the exchange of bonds for Atkins' stock in the old corporation, inasmuch as the bonds received by him were of no greater aggregate par value than the stock for which they were exchanged. The alleged deficiency of $124,920, because of the bonds received by Atkins for his stock, was therefore disallowed. The board, however, sustained the disallowance by the Commissioner of the deductions claimed by Atkins in his return because of the Atkins-Cooney lease and the Commercial Oil Company stock.

The present appeal was thereupon taken in behalf of Atkins' estate from the decision of the board.

Appellant contends that the word "income," as employed in the Sixteenth Amendment to the Constitution of the United States, was used to refer only to receipts in cash, and not to receipts of property in exchange for other property, and consequently that the receipt by Atkins of bonds payable at a date subsequent to the taxable year, and not actually paid within that year, is not chargeable to him as income therein.

Appellant also contends that, inasmuch as Atkins reported his income on the basis of cash receipts and disbursements, he was not compelled to return the sums represented by the bonds until they were actually received by him in cash.

Appellant furthermore contends that the exchange of stock, lease, and process involved a lump sum transaction, made in connection with the reorganization of the Louisiana corporation, and that, under section 202(b) of the Revenue Act of 1918, no gain is taxable because thereof.

We do not agree with any of these contentions.

In the first place we think that the transfer by Atkins of his stock in the Louisiana corporation, his interest in the Noel lease, and the Christman process, to the New York corporation, were separate transactions based upon individual considerations, and were not a lump sum transaction.

We think, moreover, that the bonds received by Atkins in excess of cost, for his interest in the Noel lease and the Christman process, should be treated as income in the year 1919.

Section 202 of the Revenue Act of 1918 reads in part as follows:

"Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

\* \* \* \* \* \*

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. \* \* \*"

In Marr v. United States, 268 U. S. 536, 539, 45 S. Ct. 575, 576, 69 L. Ed. 1079, a case relating to securities received by a taxpayer in exchange for other securities in a reorganization of a business enterprise, Mr. Justice Brandeis, speaking for the Supreme Court of the United States, said:

"The government insists that identity of the business enterprise is not conclusive; that gain in value resulting from profits is taxable as income, not only when it is represented by an interest in a different business enterprise or property, but also when it is represented by an essentially different interest in the same business enterprise or property; that, in the case at bar, the gain actually made is represented by securities with essentially different characteristics in an essential-

ly different corporation; and that, consequently, the additional value of the new securities, although they are still held by the Marrs, is income under the rule applied in United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; and Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906. In our opinion the government is right."

We are of the opinion accordingly that the term "income," as used in the Sixteenth Amendment, includes gains derived by a taxpayer from an exchange of property, as well as gains realized in money, and that the provisions in section 202(b), supra, for the taxation of such gains, is constitutional, and furthermore that corporate bonds payable at a future date having a recognized market value are "property" within the purview of the statute. Such a bond is recognized by the commercial world as something more than a mere executory contract for the future payment of money, and is given the status of a chose in possession. Accordingly it was the duty of Atkins to report the bonds as received by him in 1919, at their market value at that time. Cullinan v. Walker, supra; Atkins v. Bender (D. C.) 26 F.(2d) 690; Bedell v. Commissioner (C. C. A.) 30 F.(2d) 622, 624; Treasury Regulations 45, art. 1564.

Appellant furthermore contends that the stock which Atkins held in the Louisiana corporation had cost him, if taken at its par value, the sum of $832,800, and that the transfer thereof in 1919 for bonds having a value of $80,485.96 had resulted in a loss to himself of $752,314.04. Or, if the value of the stock be fixed with reference to its market value as of the date of the transaction, the loss would be $107,317.10 in 1919. Appellant insists that one of these sums should be deducted from the gross income of Atkins as a loss in that year.

This claim apparently was not presented to the Board of Tax Appeals, and the record does not show the cost of the property which Atkins transferred in payment of his stock. It is the cost, not the value, of the property which controls under the statute. This question therefore is not before us. Appellant's brief contains references to various pages of the "reporter's minutes," but these are not part of the record.

The deductions claimed by Atkins for depreciation in respect to the Atkins-Cooney investment, and loss in liquidation of the Commercial Oil Company, were rejected by the Board of Tax Appeals, because of insuffi-

cient evidence in each case. In our opinion, these rulings were not erroneous.

The decision appealed from is accordingly affirmed, with costs.