ESTATE OF W. F. WILLIAMSON, DECEASED, PAULA R. WILLIAMSON, ADMINISTRATRIX, ET AL.,* PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54540, 54541, 54542. Filed October 17, 1957.

*James Evert Denebeim, Esq.*, and *Bruce K. Denebeim, Esq.*, for the petitioners.
*Edward H. Boyle, Esq.*, for the respondent.

*Proceedings of the following petitioners are consolidated herewith: Paula R. Williamson, Docket No. 54541; and Estate of W. F. Williamson, deceased, Paula R. Williamson, Administratrix, and Paula R. Williamson, Docket No. 54542.

58

OPINION.

OPPER, *Judge:* In 1948 an item of $1,000 was credited to decedent's capital account with his law firm, but was unreported as taxable income. Respondent treated this as additional ordinary income but petitioners contend that it was a trust fund and should have been dealt with accordingly. The difficulty is that there is no specific evidence to that effect and certainly none that there was a trust fund of which the $1,000 in question or any fraction of it was a part, or which was so earmarked. Since we are unable to find the facts in this connection in petitioners' favor, the deficiency must be sustained to that extent.

The other controversy as to 1948 deals with an arrangement made by decedent for the sale of his stock in the New Sutherland Divide Mining Company. He, along with a number of other owners, agreed to sell a large portion of his holdings in that company. We have found as a fact that decedent as one of the vendors was forced to and actually did agree with the prospective buyer in advance that the proceeds of the sales would not be available to him but would be transmitted to New Sutherland and treated by it as a further investment or advance by the vendors.

Decedent could, to be sure, have refused to sell his stock on such terms just as any seller can refuse to sell on credit. In that case

the transaction would not have taken place, there would have been no profits from the sale even on paper, and no question to be raised before the Tax Court. But we fail to see that, having accepted the offer, decedent was any better off when the stock had been sold than any other seller who accepts an account receivable instead of cash for his property. To a cash basis taxpayer, that is not income until the debt is collected. *Consolidated Asphalt Co.*, 1 B. T. A. 79, 82. And once the contract was made, decedent was effectively disabled from receiving, for the stock, cash or its equivalent or any consideration other than an account receivable. See *Shiman* v. *Commissioner*, (C. A. 2) 60 F. 2d 65, 66. He was never a free agent as to collecting the proceeds.

There is no question that the cash was not actually received by decedent during the tax year, and, under the circumstances, it cannot be said that it was constructively received by him in the sense that it was income available to him and subject to his command but upon which he turned his back. *Hal E. Roach*, 20 B. T. A. 919; *L. M. Fischer*, 14 T. C. 792; *Harold W. Johnston*, 14 T. C. 560; cf. *John I. Chipley*, 25 B. T. A. 1103; *John A. Brander*, 3 B. T. A. 231. And certainly the open account on New Sutherland's books was not so nearly the equivalent of cash that it could be construed as income to a cash basis taxpayer. *Nina J. Ennis*, 17 T. C. 465; *Harold W. Johnston, supra.* "So far as we have been able to ascertain, a promise to pay evidenced solely by an open account has never been regarded as income to one reporting on a cash basis by the Bureau of Internal Revenue. Certainly this is true in the absence of any showing that the amount was immediately available to the taxpayer." *John B. Atkins et al.*, 9 B. T. A. 140, 149, affd. (C. A., D. C.) 36 F. 2d 611. On this issue petitioner is sustained.

The final and principal question is whether decedent's loss in New Sutherland was a capital or ordinary one when it occurred either in 1948 or 1949. Petitioners of course insist that it was deductible in full on the ground that decedent was a professional promoter and the loss was incurred in that business; or that it was a business bad debt deductible for similar reasons; or that the arrangement he made for the sale of the stock constituted a joint venture participated in by decedent and his fellow shareholders and that the ultimate loss was thus the result of a partnership of which decedent was a member.

It is apparently conceded that decedent was not engaged in corporate financing as a business. Whether or not he could be considered generally as a "promoter," which seems highly doubtful in view of the comparatively few separate ventures he actively engaged in over a 60-year period, see *Charles G. Berwind*, 20 T. C. 808, affirmed per curiam (C. A. 3) 211 F. 2d 575; *Fred A. Bihlmaier*, 17 T. C. 620;

but cf. *Weldon D. Smith*, 17 T. C. 135, revd. (C. A. 2) 203 F. 2d 310, certiorari denied 346 U. S. 816; *Henry E. Sage*, 15 T. C. 299; *Vincent C. Campbell*, 11 T. C. 510, it seems clear he did not enter the New Sutherland Divide Mining operation in that capacity. *Samuel Towers*, 24 T. C. 199, affd. (C. A. 2) 247 F. 2d 233.

Decedent's original connection with New Sutherland was as a lawyer, and his subsequent activities all had their origin in this beginning since his status as a stockholder, and that of several of his associates, derived from their receipt of the stock as a legal fee. The subsequent actions were directed to making that fee as lucrative as possible by disposing of the stock on profitable terms. See *Charles G. Berwind*, 8 T. C. 1112. Unless the "business" aspect of the loss was part of his law business, and we think it clearly was not, *Carl Reimers Co.*, 19 T. C. 1235, affd. (C. A. 2) 211 F. 2d 66, decedent's advances must hence be viewed as nonbusiness debts. *Wheeler* v. *Commissioner*, (C. A. 2) 241 F. 2d 883, affirming per curiam T. C. Memo. 1955–138.

Besides this, not only the worthlessness of the debt, but in fact its origin, arose in years when, whatever his past history, decedent was no longer active. If he was ever previously engaged in promotion he was thus not so occupied in 1947, 1948, and 1949 when the claims arose, nor, of course, when they became worthless in the latter year. They are consequently barred from deduction as business debts. *Hadwen C. Fuller*, 21 T. C. 407; *Jan G. J. Boissevain*, 17 T. C. 325; *Hickerson* v. *Commissioner*, (C. A. 2) 229 F. 2d 631, affirming T. C. Memo. 1954–237. The same result is necessary if the loss is claimed as one incurred in carrying on a business under section 23 (e) (1), I. R. C. 1939. *Marian Bourne Elbert*, 45 B. T. A. 685, 690.

Even if we assume that the vendor stockholders' group in which decedent was a participant was a joint venture in the sense of sections 182 and 3797 (a) (2), I. R. C. 1939, a point we need not reach, it seems clear that none of the funds advanced by him to New Sutherland were made to such a joint venture. The payments were to the company, were credited to his individual account, and were clearly for the purpose of improving the position of his own stock; and we have so found at petitioners' request. See *Charles G. Berwind*, 20 T. C. 808. If they were not contributions to capital, they were at the most loans as to which he was the individual creditor.

Even assuming, however, that decedent advanced the funds to a joint venture of which he was a member, there is no evidence of any loss in that undertaking. And, in fact, the indications are to the contrary. Although the supposed "partnership" made no tax return, it apparently liquidated and distributed its assets in about April 1949. At that time the fair market value of the New Sutherland stock was such that all of the interests of the supposed joint venturers could have been paid off either in cash or by a return of

their stock. If there was a loss in 1949, and this seems to be conceded, it must have occurred later in the year and constituted an individual capital loss of decedent.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

BRUCE, *J.*, dissents.

_____

MURDOCK, *J.*, dissenting: Some of the shares of New Sutherland stock belonging to Williamson were sold in 1947 and 1948 as a result of which he had a loss of $29.04 from the 1947 sales and a gain of $2,124.76 from the 1948 sales. Travers, an underwriter acting for himself and others, either bought the shares or arranged for their purchase. Prospects of completion of the corporation's mill had already raised the market price of the stock and it was felt that efforts to complete the plant would benefit future sales. Any such benefit would be to Williamson's advantage as well as to the advantage of Travers, his associates, and other stock owners hoping to sell shares in the future. Williamson agreed with Travers before the sales here in question that he would lend the proceeds of the sales to the corporation to help complete its plant. He voluntarily furnished other larger amounts to the corporation during 1948.

The result of the majority Opinion is that Williamson's loss from the 1947 sales is not deductible in that year, and his gain from the 1948 sales is not taxable in that year, despite the fact that the full purchase price was paid in cash by the purchasers. All of the sales transactions are combined and regarded as still open for tax purposes after 1948. This odd result is reached by getting into the field of constructive receipt, and apparently whatever net gain or loss may ultimately result is to depend upon the outcome of the loan to the corporation of the proceeds of the sales. I do not follow this reasoning as to the losses or the gains and deem it contrary to the holding in *Luther Bonham*, 33 B. T. A. 1100, affd. 89 F. 2d 725. Obviously, a loss could not be reduced by a subsequent loan of the proceeds of the sale.

Will the loan of the sales proceeds, made by Williamson to the corporation, have as its basis for possible loss, not the $11,616 actually loaned but, instead, the basis to Williamson of the stock which he sold to or through Travers? Suppose the corporation is eventually able to pay 50 cents on the dollar. Is the difference between that amount and the basis of the stock a loss from a bad debt or the amount realized from cash sales to third parties; is the amount received on the debt not to be subtracted from the amount loaned to determine the bad debt; or is the amount paid on the debt to be divided in some way between payment of the debt and the amount realized from the sale of the stock,

even though none of it was received from the purchaser of the stock? The tax effects of a sale and a bad debt could differ by 50 per cent. If the company is able to repay the loan in full, does Williamson have a gain at that time from a loan or is the entire amount to be regarded as realized on the sale of the stock and the loan ignored? And, if the loan is to be ignored, are the normal interest payments from the corporation to Williamson to be regarded as additional amounts realized from the sale of the stock to Travers?

The uncertain financial condition of Sutherland is not claimed to support the majority treatment of these transactions. Suppose a taxpayer owns a substantial number of shares of a small solvent operating corporation; the cost of the stock to him was $1 a share; the stock is selling at $100 a share; the corporation needs $10,000 of additional funds; the taxpayer recognizes the advantages to him through his remaining shares of the proposed use of the money by the corporation; and a purchaser is willing to buy 100 shares of the taxpayer's stock at market if the seller is willing to lend the proceeds to the corporation. Can the taxpayer avoid a taxable profit of $9,900 by agreeing with the purchaser prior to the sale that the proceeds of the sale will be loaned to the corporation? . I think not.

The sale of the stock and the loan to the company have to be kept separate for income tax purposes. Williamson sold his stock, the purchaser paid cash for it, Williamson loaned the proceeds to the corporation and thus entered into a new loan transaction with a new party, the corporation. The new transaction does not affect the sale of his stock to the third party. The loan had no effect upon the loss realized from the 1947 sales and the 1948 gain was taxable in that year.

TURNER, WITHEY, and PIERCE, *JJ.*, agree with this dissent.