### ROGERS v. COMMISSIONER OF INTERNAL REVENUE.

### ROGERS et al. v. SAME.
### No. 9007.

Circuit Court of Appeals, Ninth Circuit.

April 20, 1939.

Claude I. Parker, John B. Milliken, Bayley Kohlmeier, and Harriet Geary, all of Los Angeles, Cal., for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, S. Dee Hanson, and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

**GARRECHT, Circuit Judge.**

Petitions to review decisions of the Board of Tax Appeals bring these cases before us. The Commissioner gave notice of deficiency in income taxes of each petitioner for the calendar year 1933, and from adverse decisions of the Board of Tax Appeals to which each taxpayer carried the proceeding, these petitions result. The opinion of the Board of Tax Appeals is reported in 37 B.T.A. 897.

The facts were stipulated and are substantially as follows:

In September, 1927, Will Rogers and his wife, Betty Rogers, purchased certain real property in the County of Los Angeles, California, for the sum of $105,000, payable as follows: $15,000 cash at the time of purchase; the assumption of a note for $52,000, which was secured by a mortgage on the property and was due and payable in 1930; and the giving of a promissory note for $38,000, to be secured by a deed of trust to said property. This latter note was in favor of Oren B. Waite, or order, dated August 19, 1927, bearing interest at the rate of 7% per annum, payable on or before August 19, 1932. The Rogers conveyed the property to the Title Insurance and Trust Company, as trustee, to be held in trust as security for the payment of the promissory note of $38,000.

The property purchased was income property and the transaction entered into for profit.

The $52,000 note was paid by Will Rogers and Betty Rogers prior to 1933.

The $38,000 note became due and payable August 19, 1932, and payment thereof was demanded of the Rogers on August 25, 1932. The note was not paid. Thereafter, it was agreed that Will Rogers and Betty Rogers would convey the property to the holder of the $38,000 note and trust deed and that the latter would cancel and surrender the note. On April 21, 1933, Will Rogers and Betty Rogers transferred and conveyed said property, by grant deed, to the California Trust Company, and the said note, in the amount of $38,000 was surrendered to Will Rogers and Betty Rogers, and cancelled.

Prior to April 21, 1933, the Rogers paid $67,000 toward the purchase price of said property and escrow expenses of $212.02, a total of $67,212.02. For the years 1927 to 1932, inclusive, they claimed and were allowed depreciation on the improvements on said property in the total amount of $13,156.77.

The total unrecovered cash investment in the property at the time of the conveyance to the California Trust Company on April 21, 1933, was $54,055.25.

Will Rogers and his wife, Betty Rogers, filed separate income tax returns for the year 1933, each claiming to have sustained a loss in the year 1933, from the aforesaid transaction, in the amount of $27,027.62, or one half the amount set out in the paragraph immediately preceding. The Commissioner determined a deficiency against the petitioner Betty Rogers for the calendar year 1933 in the sum of $17,055.90, and against the executors of the estate of Will Rogers, deceased, in the sum of $16,894.61, holding the loss suffered a capital loss, rather than an ordinary loss. The petitioners claim the Board of Tax Appeals erred in so holding. The respondent states the question presented, "Whether the marital community loss sustained by petitioners in the taxable year was a statutory capital net loss or an ordinary loss within the meaning of the statute." Under the statutes, set forth in the margin,[1] an ordinary loss is

---

[1] Revenue Act of 1932, 47 Stat. 169, 179, 180.

"§ 23. *Deductions From Gross Income.*

"In computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*

"(e) Losses by Individuals.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\*   \*   \*   \*   \*   \*

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*"
26 U.S.C.A. § 23(e) (2).

Revenue Act of 1932, 47 Stat. 169, 191, 192:

"Sec. 101. *Capital Net Gains and Losses.*

\*   \*   \*   \*   \*   \*

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be

allowable in full, while a capital net loss is allowable only to a certain specified percentage.

▮ The petitioners do not argue that the property was not a capital asset and we assume, therefore, the property having been held by them for more than two years (§ 101(c) (8) Revenue Act of 1932, 47 Stat. 192) it was a capital asset. This reduces the question to whether there was a "sale or exchange" thereof; if not, the loss was an ordinary loss and deductible in full.

The principal contention presented is that the transaction was not a "sale or exchange" under the Act. The petitioners assert that they received nothing from the transaction and that a "sale" imports both parties to the transaction receive something. Moreover, they cite cases to the effect that payment of an obligation according to its terms is not a sale or exchange.[2] But, obviously, here was no payment of an obligation according to its fixed terms.

▮ As defined by Iowa v. McFarland, 110 U.S. 471, 478, 4 S.Ct. 210, 214, 28 L.Ed. 198, "A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." See, also, United States v. Benedict, 2 Cir., 280 F. 76, 80; Gallus v. Elmer, 193 Mass. 106, 78 N. E. 772, 8 Ann.Cas. 1067.

▮ The Supreme Court of the State of California has answered the contention that the transaction could not be a "sale" because the petitioners received nothing therefrom— "It is well settled in this state that the extinguishment of security or a pre-existing debt constitutes a valuable consideration for the sale or assignment of property." Ferguson v. Larson, 139 Cal. App. 133, 135, 136, 33. P.2d 1061, 1062.

There was no showing or intimation that the petitioners were financially unable to pay the indebtedness. The situation is analogous to one where the mortgagor sells the property to a third party for a sum equal to the amount due on his note and then pays the note with that money. The result to the taxpayer would be exactly the same as here, although it could not there be maintained that the taxpayer received nothing of value for the property. Compare United States v. Hendler, 303 U.S. 564, 566, 58 S.Ct. 655, 656, 82 L.Ed. 1018, where the Supreme Court said, "The Hendler Company was the beneficiary of the discharge of its indebtedness. Its gain was as real and substantial as if the money had been paid it and then paid over by it to its creditors. The discharge of liability by the payment of the Hendler Company's indebtedness constituted income to the Hendler Company and is to be treated as such." Taking this view of the facts, we are unable to see where Hale v. Helvering, 66 App. D.C. 242, 85 F.2d 819, relied upon by petitioners, compels a contrary conclusion.

In Commissioner v. S. A. Woods Mach. Co., 1 Cir., 57 F.2d 635, 636, B. Corporation paid an obligation to A. Corporation in stock of A. Corporation. Article 543 of Regulations 65 contained provision that a corporation realizes no gain or loss from purchase or sale of its own stock, the reason being that such a transaction leaves it with nothing more or less than it had before, because it is already the owner of all its property. Cf. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. But the court said: "The transaction involved in this case was equivalent to the payment of the debt in cash and the investment of the proceeds by the corporation in

---

this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) Definitions. For the purposes of this title—

\* \* \* \* \* \*

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

\* \* \* \* \* \*

"(6) 'Capital net loss' means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

\* \* \* \* \* \*

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \* \* \*" 26 U. S.C.A. § 101 note.

[2] United States v. Fairbanks, 9 Cir., 95 F.2d 794, 796, Watson v. Commissioner, 27 B.T.A. 463, 465; Braun v. Commissioner, 29 B.T.A. 1161, 1177; Hellman v. Commissioner, 33 B.T.A. 901, 902.

its own stock. If that had been done clearly the cash received would have been taxable income. The transaction was not changed in its essential character by the fact that, as the debtor happened also to own the stock, the money payment and the purchase of stock were by-passed, and the stock was directly transferred in payment of the debt. The stock was the medium in which the debt was paid." So, here, the property was the medium through which the debt was paid.

We are cited to Commonwealth, Inc. v. Commissioner, 36 B.T.A. 850, as holding contrary to the decision of the Board in the case before us, but even if this case cited were squarely in point, which it is not, it would not be authority for a reversal, for, other things being equal, one decision of the Board is entitled to as much weight as another, and we are not advised that the case was reviewed.

In any event, we are of opinion that here, a "sale" of a capital asset was accomplished and that the deduction must be taken under the capital asset section.

Affirmed.