## C. L. GRANSDEN & CO. v. COMMISSIONER OF INTERNAL REVENUE.

### TUTTLE v. SAME.

#### Nos. 8440, 8445.

Circuit Court of Appeals, Sixth Circuit.
Jan. 8, 1941.

Ward H. Peck, of Detroit, Mich., for petitioners.

S. Dee Hanson, Sp. Asst. to Atty. Gen., for respondent.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Howard D. Pack, Sp. Assts. to Atty. Gen., on the brief for respondent in No. 8440.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and S. Dee Hanson, Sp. Assts. to Atty. Gen., on the brief for respondent in No. 8445.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

It is agreed that both petitions to review orders of the Board of Tax Appeals, raise the identical question of law. A single opinion will, therefore, suffice.

In each case the petitioning taxpayer was the vendee of real estate in Michigan under a land contract calling for a down payment on the purchase price with the balance payable over a term of years in installments. Title to the real estate in each case, remained in the vendors, and the contracts provided that if the vendee failed to perform, the vendor had the right, immediately after default, to declare the contract void, retain whatever might have been paid thereon, and be entitled to immediate possession of the premises. In each case there was default, and each taxpayer surrendered the land contract and made a payment to the vendor in consideration of being relieved of any further obligation thereunder.

The Gransden transaction involved two contracts, one upon Detroit property, and the other upon a tract in Flint. The Detroit property was not purchased from the owner of the fee, but from the vendees in a prior land contract, at a profit to them. When the principal balance remaining unpaid upon the purchase price had been reduced to an amount equal to the balance remaining unpaid upon the original land contract, the latter was assigned to Gransden upon Gransden assuming liability thereunder, and agreeing to pay the balance. Both land contracts were surrendered to the owner of the title, together with a quit-claim deed from the first vendee, in exchange for an instrument by the owner acknowledging receipt, and the payment of $250 by the petitioner, and releasing petitioner from claims of any nature arising out of the sale of the property. In the Tuttle case there was but one land contract in which the taxpayer was the vendee of the owner of the fee. This contract was likewise surrendered by the taxpayer to his vendor in consideration of a release from further obligation upon it. In addition to surrendering the contract, Tuttle paid his vendor $1,000 as additional consideration for release of liability.

Each of the taxpayers suffered substantial loss realized during the tax year, the Gransden loss consisting of payments made upon the two parcels of real estate involved in its purchase contracts, and a cash outlay for additions and betterments, while the Tuttle loss was confined to payments made upon the purchase price. Each taxpayer claimed a deduction for the total loss suffered, which the Commissioner disallowed, in part, in a determination sustained by the Board.

The applicable statute is the Revenue Act of 1934. In the Gransden case, the taxpayer being a corporation, and the Commissioner concluding that its loss was a capital loss, limited its deduction to $2,000 pursuant to the provisions of § 117(d) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 708, which provides: *"Limitation on Capital Losses.* Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *"* In the Tuttle case, the taxpayer was an individual and the property having been held for more than five but not for more than ten years, the deduction was limited to 40% of the total loss in pursuance of §

117(a) of the Act, 26 U.S.C.A. Int.Rev. Acts, page 707, which provides: *"General Rule.* In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: * * * 40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years * * *."*

While in Michigan the interest of the vendee in real estate purchased upon an executory land contract is a mere equitable title, Lutz v. Dutmer, 286 Mich. 467, 282 N.W. 431; Hooper v. Van Husan, 105 Mich. 592, 63 N.W. 522, yet, such titles have been continuously bought and sold, as demonstrated in the sale of the Detroit property to Gransden in the first instance, have justified substantial outlay for additions and betterments, and have served as security for loans. It is not, therefore, with confidence urged by the petitioners that their equities in the real estate were not capital assets, or their losses were not capital losses within the purview of §§ 117 (a) and 117(d). Their main insistence is that the losses did not result from a sale or exchange, and that they were, therefore, ordinary losses deductible to their full extent under permission of § 23(f) in the case of corporations, and of § 23(a) in the case of individuals, without application of the limitations contained either in § 117(a) or § 117(d).

The petitioners argue that when they surrendered their contracts they but surrendered their right to purchase real estate, and that the transactions were, in effect, but mutual cancellations of executory contracts which did not constitute separate and distinct transactions from the original purchase agreements; that the losses suffered resulted not from sale or exchange, but from depreciation in value, and that by surrender and release neither they nor their vendors acquired or assigned anything of exchangeable value. Their interest in the property had been extinguished by market conditions, and nothing passed to the vendors that the latter did not have the right to take by virtue of the default and the forfeiture clauses of the contracts. This ignores or sets aside as unimportant, the beneficial interest acquired by both vendor and vendee. In the termination of the buyer-seller relationship the purchaser gave up the right of pos-

session during forfeiture proceedings, the right to resort to moratorium remedies, and the speculative possibilities of restored value. The seller secured prompt possession of his property, saved the expense and delay of forfeiture proceedings, and surrendered his right to enforce the contract by way of a deficiency decree, or otherwise, against a vendee concededly or presumptively solvent and financially responsible.

Upon an earlier and better market for real estate it was not unheard of for vendors of real estate under land contracts to repurchase the property from their vendees at a profit to the latter. It would have been idle, in such cases, to contend that the transaction was not a sale or exchange of property merely because its reacquisition required no deeds and could be accomplished simply by the vendee surrendering his land contract to his vendor. The simplicity of the mechanism is likewise no bar to the recognition of a capital loss as resulting from a sale or exchange.

 It has frequently been held that income may be realized upon a change in the nature of legal rights held, although the particular taxpayer has enjoyed no addition to his economic worth. Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L. Ed. 1149; Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Helvering v. Midland Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 426, 81 L.Ed. 612, 108 A.L.R. 436. As was said in the last cited case: "Where the legal effect of a transaction fits the plain letter of the statute, the tax is held payable, unless there is clearly revealed in the act itself or in its history a definite intention to exclude such transactions from the operation of its applicable language." As the property there was the medium through which interest was received, so here the rights exchanged operated to extinguish the liability under the contract, and as there observed in reliance upon Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, "The income tax laws do not profess to embody perfect economic theory."

 The case of Rogers v. Commissioner, 9 Cir., 103 F.2d 790, involved the surrender of property subject to a mortgage in which default had been made by the purchaser, and it was there, as here, contended that the transaction was not a sale or exchange because neither party received anything of exchangeable value.

The court reasoned that the situation was analogous to one where the mortgagor sells the property to a third party for a sum equal to the amount due on his note, and then pays the note with the money. While normally the taxability of a transaction is determined by what is done rather than by what might have been done, yet the courts will always look through the form of a transaction to determine what, in substance, it is, and as indicated, it is our view that beneficial interests passing from vendor to vendee, and conversely, characterize the transactions here considered as sales or exchanges of capital assets. The transactions were voluntary and we are not presently concerned with the question as to whether a forced judicial sale is a sale or exchange of capital assets within the purview of § 117 as we were in Commissioner v. Hammel, 6 Cir., 108 F.2d 753, reversed 311 U.S. ——, 61 S.Ct. 368, 85 L.Ed. ——. Nor are we concerned with any inconsistency in the classification of the cash payments by the petitioners to their vendors as ordinary losses, since such classification is not the subject of the present review.

The decisions of the Board of Tax Appeals are affirmed.