FRED A. BIHLMAIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20976. Promulgated October 8, 1951.

*Stanley Jakubowski, Esq.*, for the petitioner.
*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* On the first issue, petitioner assigns error in respondent's determination that the loss of $2,075 claimed as a deduction on his return for 1945 was a capital loss, deduction of which was limited by section 117 (d) of the Internal Revenue Code to $1,000, and not an ordinary loss deductible in full. The parties agree that the transaction was entered into for profit, that there was a loss in 1945, and that it amounted to $2,075. They also agree that the contract was a purchase contract binding on petitioner rather than a mere option to purchase and that under the contract petitioner received immediately an equitable title to the land. Since it was not an option, the parties do not argue the applicability of section 117 (g) (2) of the Code, relating to the treatment of gains and losses attributable to the failure to exercise privileges or options to buy or sell. The issue is narrowed to the question whether respondent erred in determining that there was a "sale or exchange" of petitioner's equitable interest.

Petitioner's argument is that by not carrying out the contract on his part he forfeited the down payment, that there was no sale or exchange involved in the forfeiture, and there was no other party to that forfeiture. Petitioner cites no cases on this point.

In *Cape May Real Estate Co.* v. *Henderson,* 231 Pa. 82, 79 Atl. 982, it is stated that the general rule in Pennsylvania is that a purchaser in a contract to buy land cannot take advantage of his own wrong or set up his own default to work a forfeiture of his contract unless the contract so provides, and that upon the purchaser's default, the seller may elect either to assert and enforce the forfeiture or to insist upon performance of the contract. That case is cited with approval in *Freeman* v. *Lawton,* 353 Pa. 613, 46 A. 2d 205, in which it is stated that mere default in payment of installments does not of itself constitute cancellation, though furnishing cause therefor, and that to effect cancellation of a land contract the express or implied assent of the vendor is necessary. The contract here gave the sellers the right to elect between forfeiture and suit for performance. It did not give the purchaser any election in this respect.

The Board of Tax Appeals (now this Court) has held that where the buyer has defaulted on a contract to purchase land and thereafter the parties have reached a settlement, the buyer giving a quitclaim deed to the property and the seller releasing the buyer of further liability on the original contract, the later transaction is a "sale or exchange" within the meaning of section 117 of the Code, and the buyer has sustained a capital loss. *Betty Rogers,* 37 B. T. A. 897, affd. 103 F. 2d 790; *Harold R. Smith,* 39 B. T. A. 892; *C. L. Gransden & Co.,* 39 B. T. A. 985, affd. 117 F. 2d 80.

On the other hand, in *C. G. Ganopuls*, 39 B. T. A. 1120, it was held that no sale or exchange occurred where, after the buyer's default, the seller mailed him a notice of forfeiture declaring the contract forfeited and notifying him to deliver up the premises. Respondent has not acquiesced in that decision and now argues that it is in effect disapproved in view of later decisions of the Supreme Court in *Helvering* v. *Hammel*, 311 U. S. 504; *Helvering* v. *Nebraska Bridge Supply & Lumber Co.*, 312 U. S. 666; and by other decisions, such as *Commissioner* v. *Paulson*, 123 F. 2d 255, and *George Hewitt Myers*, 3 T. C. 1044.

We think it unnecessary to consider the application of the *Ganopuls* case here, for petitioner has failed to prove that there was no sale or exchange in the termination of this contract. He entered into the contract, paid the deposit and $75 for expenses in connection with it, and failed or refused to make settlement on the day fixed therefor. He did not recover the amounts paid out. He received a letter threatening suit for specific performance. This is all we are told. Since respondent saw fit to allow the loss as to 1945, we may surmise that the transaction was terminated and the amounts were lost in that year. But we do not know whether the vendor declared the deposit forfeited; effected an agreement with petitioner to cancel the contract and release petitioner of further liability; or took some other action. Any such circumstances would be important in determining whether a "sale or exchange" occurred or petitioner's rights in the property were extinguished by action of the vendor as provided in the contract. Petitioner has not expressly negatived the existence of a subsequent agreement which would confirm the respondent's action. We may not assume that nothing more occurred. In this state of the record we must sustain the respondent's determination that a capital loss resulted from the transaction.

On the second issue, petitioner insists that he was in the manufacturing business in the taxable years 1945 and 1946; that he advanced $4,524.27 to said business in 1945 and $12,590 in 1946; that the sums so advanced were never returned to him; and that the advances became worthless in those years. He claims them deductible as business bad debts.

From the facts as we have found them, however, we conclude that the manufacturing business to which the claimed advances were made was not the business of petitioner, but the business of Stanley Engineering Corporation of which petitioner was president and a substantial stockholder. Recent decisions of this Court in which petitioners who were officers and principal stockholders of corporations have contended that amounts which they put into the corporations by way of loans or advances were deductible as "business" as distinguished from "nonbusiness" bad debts, indicate little sympathy for

petitioner's contention. *A. Kingsley Ferguson*, 16 T. C. 1248; *Jan G. J. Boissevain*, 17 T. C. 325. In those cases under facts similar to those here it was decided that petitioners were not engaged in businesses of their own in managing and financing the corporations of which they were officers and substantial stockholders. Accordingly, we cannot subscribe to petitioner's theory that his activities with relation to the corporation constituted his individual business.

Even if we could approve that contention, petitioner is confronted with a further difficulty. Petitioner claims the amounts which he advanced to the corporation to be deductible as "debts which become worthless within the taxable year," section 23 (k), Internal Revenue Code.

Under the facts this would seem to put petitioner in something of an anomalous situation. It is well settled that debts may not be deducted as bad debts unless they had value when acquired or created. *Eckert* v. *Burnet*, 283 U. S. 140. And the burden of proving that the debts were not worthless when created is on petitioner. For the year 1945 we think petitioner has carried that burden. While the corporation was in straitened circumstances in that year its balance sheet was still in the black, and we think petitioner could reasonably have expected to be repaid the money he advanced. By the end of the year, however, the situation had grown darker and the facts as we see them gave petitioner little hope of repayment. Under these circumstances, petitioner properly treated his 1945 advances as having become worthless in that year.

With respect to 1946 we see the picture differently. No one was in better position than petitioner himself to know the condition of the corporation's finances. Its financial troubles were rapidly worsening. Petitioner had himself considered the 1945 advances as worthless at the end of that year and had so treated them in his tax return for that year. Despite his action in that respect and the additional knowledge he must have gained as time went on he continued to pay money into the corporation in 1946. It seems to us obvious that petitioner had no hope of recovering the amounts advanced in 1946. By the end of 1946 petitioner acknowledged in the debtor's reorganization petition which he filed on behalf of the corporation that the corporation was unable to pay its creditors. Furthermore, in his tax return for 1946 petitioner denominated his advances as "paid into Stanley Corp. now liquidated." From these facts we think the only reasonable conclusion to be drawn is that petitioner was not creating debts by advancing money to the corporation in 1946, but was in fact making a capital contribution to it. Accordingly, we hold that the 1946 advances were not deductible as worthless debts. See *Reading Co.* v. *Commissioner*, 132 F. 2d 306, 310, affirming a Memorandum Opinion

of the Board of Tax Appeals (now this Court). There it was pointed out that advances under somewhat similar circumstances have been characterized as gifts or contributions of capital, but not debts.

*Decision will be entered under Rule 50.*