RALPH A. AND AZALEA BOATMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67388. Filed September 14, 1959.

*Jack R. Miller, Esq.*, for the petitioners.
*Walter O. Johnson, Esq.*, for the respondent.

### OPINION.

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' income tax and additions to tax under section 294(d)(2) of

the Internal Revenue Code of 1939 [1] in the amounts of $1,810.20 and $108.61, respectively, for the year 1952. The issues are:

(1) Whether a payment of $12,000 received by petitioners in 1951 upon the execution of a contract to sell real estate and retained by them in 1952 when the prospective vendee failed to carry out the contract is taxable to the petitioners in 1952 as a capital gain or as ordinary income; and

(2) Whether there was a substantial underestimate of the petitioners' estimated tax for the year 1952.

All of the facts have been stipulated and they are herein incorporated by this reference.

Ralph A. and Azalea Boatman, husband and wife, are residents of Ida Grove, Iowa. They filed a joint Federal income tax return for the year 1952 with the district director of internal revenue at Des Moines, Iowa. Ralph A. Boatman will hereinafter be called the petitioner.

On September 29, 1951, the petitioner executed a real estate contract with Roy Burcham, and under the terms of this contract petitioner agreed to sell and Burcham agreed to buy a farm consisting of about 327 acres located in Audrian County, Missouri. The farm had been acquired by the petitioner in March 1951. The agreed selling price of the farm was $60,000 with $12,000 payable upon the execution of the contract and the balance payable upon delivery of the deed. Burcham paid the $12,000 to the petitioner on September 29, 1951. The real estate contract provided that the vendor was to deliver to the vendee on or before March 1, 1952, a deed containing the usual and customary warranties and that possession of the farm was to be given to the vendee on March 1, 1952. The contract also provided for liquidated damages in case of default by either party as follows:

In the event that either party shall fail to duly perform his part of this agreement, the party defaulting shall forthwith pay to the other party as liquidated damages 20 per cent (20%) of the agreed price and in any event not less than the sum of $200.00. * * *

The sale and purchase under the contract was not carried out; the balance of the purchase price was not paid on March 1, 1952, and no deed was delivered. On or about March 15, 1952, the petitioner, having been advised by legal counsel in Mexico, Missouri, that he could either keep the farm or offer it for sale again, entered into an oral contract with the McGuire Auction Company of Holstein, Iowa, for the sale of the farm at public auction to be held on March 24, 1952. A few days after the sale, bills announcing the sale of the farm were distributed in and around Mexico, Missouri. Petitioner was advised

---

[1] All section references are to the Internal Revenue Code of 1939, unless otherwise noted.

by his legal counsel that Burcham was threatening to bring suit against him on the real estate contract. An agreement was reached between petitioner and Burcham and it was executed under date of March 24, 1952.

The agreement recited that the real estate contract had not been completed, that both parties declared a forfeiture of the contract, that each party was desirous of settling all claims and causes of action against the other, and that it was desired by both parties that the farm be sold at auction, as advertised. The agreement provided that petitioner was to retain the $12,000 paid to him by the vendee in 1951. If the farm were sold at the auction, petitioner was to receive the first $48,000 of the proceeds of sale. All liens and encumbrances against the farm, as well as any expenses of the sale, were to be paid from this amount. The remainder of the proceeds of sale was to be paid to Burcham, but not to exceed the sum of $12,351. The balance, if any, of the sale proceeds was to be paid to petitioner. The agreement also contained mutual releases of the parties from any claim, damages, or causes of action, and it further provided for the execution and delivery to petitioner of a quitclaim deed to the farm by Burcham and his wife. The quitclaim deed was executed and delivered to petitioner on the date of the agreement.

The farm was offered for sale at public auction on March 24, 1952, and petitioner's bid of $44,000 was the highest bid received at the auction. No part of this bid went to Burcham under the agreement and petitioner retained the $12,000 received by him in 1951. On June 5, 1952, the petitioner sold the farm for $55,000 to an unrelated third party.

The petitioner included the $12,000 received by him in 1951 as part of the selling price on the subsequent sale in June of 1952. Using the amount of $67,000 as the total selling price, the petitioner reported on his Federal income tax return for 1952 a long-term capital gain of $20,213.78 from the sale of the farm. The respondent in his notice of deficiency treated the $12,000 downpayment as a forfeiture and, after reducing it by various costs and legal fees amounting to $4,194.97, included the balance of $7,805.03 in the petitioner's 1952 income as a short-term capital gain. In an amended answer the respondent alleged that "should it be determined by the Court that said adjustment is not the net gain from the sale of a short-term capital asset, then in the alternative it constituted ordinary income received by the petitioners as liquidated damages arising out of a * * * real estate contract."

Since a short-term capital gain in this case would be taxed to the same extent as ordinary income, petitioner's tax liability would be the same under either method.

We disagree with the petitioner's contention that the $12,000, less expenses and fees, is a long-term capital gain. The executory contract of sale, under date of September 29, 1951, provided for liquidated damages of 20 per cent of the agreed price of $60,000 if either party failed to duly perform his part of the contract. Burcham, the vendee, made a downpayment of $12,000, which was exactly 20 per cent of the selling price, and he agreed to pay the balance in March 1952, at which time the petitioner was to deliver a deed to the farm. Burcham did not pay the balance when the time came, no deed was ever delivered, and the sale was never carried out. In other words, the vendee simply failed to perform his part of the contract and the petitioner kept the $12,000 as liquidated damages. There is some intimation in the record that the vendee was asserting petitioner was somehow in default but this is of no consequence. The fact remains that what petitioner retained, namely the $12,000, was liquidated damages for the vendee's default in performing the contract. While a vendor of real estate, in case of default by the vendee, can elect one of several remedies, it is quite obvious that the vendor in this case accepted the $12,000 as liquidated damages which was his right under the contract. Such liquidated damages are taxable as ordinary income. *A. M. Johnson*, 32 B.T.A. 156; see also *Emily B. Harrison*, 7 T.C. 1; *Doyle* v. *Commissioner*, 110 F. 2d 157. In the *Johnson* case this Court said:

> The petitioner proceeds on the theory that the payments of $90,000 and $360,000 were made pursuant to the terms of a contract of sale of the company stock and, hence, related to the disposition of a capital asset held for more than two years. The petitioner's theory is based on a false premise. The payment was made not because of the disposition of a capital asset. It was a payment of liquidated damages for failure to complete a sale.
>
> After the payment the petitioner had exactly the same capital assets as before the transaction was entered into. The entire transaction took place during the taxable year of 1929. Consequently, there is no basis for contending that the $450,000 income arose from the disposition of a capital asset. The income was ordinary income, taxable at the prescribed rates.

Here also the petitioner still had his farm after the default, and in addition he had $12,000.

If petitioner is to prevail in treating this amount retained by him as a long-term capital gain, there must, at the very outset, be a sale or exchange. Sec. 112. If there was no sale or exchange, then obviously the $12,000 was ordinary income under section 22 (a) which reaches for income, gains, and profits from "dealings in property" or "derived from any source whatever."

The words "sale" or "exchange" as used in the Internal Revenue Code must be given their ordinary meanings. *Helvering* v. *Flaccus Oak Leather Co.*, 313 U.S. 247; *Gaius G. Gannon*, 16 T.C. 1134, 1139. " 'A sale, in the ordinary sense of the word is a transfer of property

for a fixed price in money or its equivalent.' *Iowa* v. *McFarland*, 110 U.S. 471, 478." *Betty Rogers*, 37 B.T.A. 897, affd. 103 F. 2d 790.

The facts were all stipulated and it is abundantly clear that no sale was ever made by petitioner. He merely entered into a sale contract which was never carried out—a transaction which left him with the subject of the contract plus $12,000.

Petitioner makes various "alternative" arguments, inviting different conclusions of fact, upon which he predicates arguments to the effect that almost any conceivable view of what transpired will result in capital gains treatment for the $12,000. These arguments are based on such assumptions, that the original sale contract was carried out, although he stipulated it was not; that the agreement of March 24, 1952, was, in some manner, a "short-form foreclosure" of the contractual obligation of $48,000 by petitioner; or that a "sale" occurred under the March 24, 1952, agreement or the so-called auction sale on that date.

There is no merit in any of petitioner's contentions. The fact remains petitioner never sold or exchanged anything that resulted in his receiving the $12,000. In fact, as many cases hold, petitioner is cast in the role of buyer when the defaulting vendee, as did the vendee here, quitclaims his equitable title back to the vendor in settlement of his contract obligations. *Fred A. Bihlmaier*, 17 T.C. 620; *Harold R. Smith*, 39 B.T.A. 892; *C. L. Grandsen & Co.*, 39 B.T.A. 984, affd. 117 F. 2d 80; *Betty Rogers, supra.*

The agreement of March 24, 1952, merely had the effect of extending the performance date of the vendee under the original contract since he could, if he wished, use the $12,000 he had paid as a part of the purchase price if he decided to buy, and, in addition, it gave him a chance to recoup all or a part of the $12,000 paid if someone else bought the farm for more than $48,000 at said sale. The sale, on March 24, 1952, was not a real auction sale. It was no more than a public offering of the farm for sale by the owner. It was not intended to be, and it definitely was not, a public sale of the property to the highest bidder. With the owner having a right to bid, which means he could reject any other bid, the so-called auction was nothing more than an effort to secure a purchaser at a price acceptable to the owner. That no sale or exchange occurred when petitioner bid $44,000 for the farm at this so-called auction sale is too clear for words.

We hold, therefore, that the amount of $12,000, less expenses and fees, retained by the petitioner when the executory contract for the sale of the farm was not carried out, is taxable to him as ordinary income under section 22(a).

The second issue is whether the petitioner substantially underestimated his estimated tax for the year 1952 within the meaning of sec-

tion 294(d)(2). This subsection provides for an addition to tax if the estimated tax paid is, in the case of farmers, less than 66⅔ per cent of the total tax liability for that year. There is no provision in this subsection for reasonable cause. The evidence is clear that the petitioner paid an estimated tax of $2,000 and that his reported tax liability on the 1952 return was $3,544.04. Our holding on the first issue increases this tax liability. It is obvious that the estimated tax paid is less than the required 66⅔ per cent. We sustain the respondent on this issue.

*Decision will be entered for the respondent.*