Robert J. Stuart and Emma R. Stuart v. Commissioner.
Stuart v. Commissioner
Docket No. 75046.
United States Tax Court
T.C. Memo 1960-234; 1960 Tax Ct. Memo LEXIS 56; 19 T.C.M. (CCH) 1311; T.C.M. (RIA) 60234; October 31, 1960
Harry Yohlin, Esq., for the petitioners. Edward L. Newberger, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined a deficiency in the income tax of petitioners for the taxable year 1955 in the amount of $13,281.06. The only issue for decision is whether respondent has erred in treating gain from petitioners' sale or other disposition *57 of property as having been realized in 1955 rather than 1954. Findings of Fact Such facts as have been stipulated are so found. Petitioners are husband and wife, residing in Burlington, New Jersey. In 1954 and 1955, they resided in Beverly, New Jersey, and filed their income tax returns for those years with the district director at Newark, New Jersey. Petitioners prior to and in 1954 owned and resided upon a 187.74 acre farm near Beverly, New Jersey. On April 21, 1954, they entered into an executory contract to sell their farm land to the purchasing agent of Levitt & Sons, Inc., which corporation was then engaged in the development of Levittown, New Jersey. The contract is as follows: THIS AGREEMENT, made this 21st day of April 1954. BETWEEN ROBERT J. STUART and EMMA R. STUART, his wife, of the Township of Willingboro, County of Burlington, State of New Jersey, parties of the First Part, hereinafter called the "Seller" and ROBERT G. BLOOMER, of the Township and County of Burlington, State of New Jersey, party or his nominee, of the Second Part, hereinafter called the "Buyer". WITNESSETH, That the Seller and Buyer respectively agree to sell and buy ALL THAT CERTAIN tract *58 and parcel of land and premises situate in the Township of Willingboro, County of Burlington, State of New Jersey, more particularly described in deed recorded in the Clerk's Office of Burlington County in Book 1072 of Deeds, Page 37, consisting of approximately 187.74 acres more or less, subject to an accurate survey to be made by B. Harold Wills, C.E. The price agreed upon is predicated upon the number of acres as provided herein. for the price of ONE HUNDRED FIFTY THOUSAND ($150,000.00) - Dollars, under the following conditions: 1. (a) A Payment of FIFTEEN HUNDRED ($1,500.00) - Dollars made herewith is to be applied on account of the purchase price. (b) A further payment of FIFTEEN HUNDRED ($1,500.00) - Dollars shall be made on or before July 20, 1954, to be applied on account of the purchase price. (c) A further payment of TWELVE THOUSAND ($12,000.00) - Dollars shall be made on or before October 20, 1954, to be applied on account of the purchase price. 2. Settlement is to take place at Burlington County Abstract Company, 451 High Street, Burlington, New Jersey, on the 20th day of April, 1955, at 2 o'clock P.M., which time is of the essence of this agreement, when the *59 Seller shall deliver a general warranty deed for the said premises, at which time the balance of the purchase price is to be paid. Buyer shall have the right to advance the settlement date by no more than six months, by giving thirty days notice in writing to the Seller of his intention to do so. The above consideration is to be delivered to Burlington County Abstract Company to be disbursed after the title insurance company selected by Buyer has completed the necessary continuation search to cover the record date of said deed. 3. In the event that the Buyer shall fail to make any of the payments called for hereunder, or shall fail to make settlement in accordance with the terms hereof, then and in that case all sums paid on account by the Buyer shall be forfeited to the Seller as liquidated damages, and the Buyer shall be released from all obligation and liability, including any right of the Seller to bring an action for specific performance, and all rights and liabilities of both parties to this agreement shall cease and determine. 4. The title to be delivered shall be marketable title and insurable by the title insurance company selected by Buyer, and shall be free and clear *60 of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted. 5. In the event that such title cannot be made by the Seller as above, and the Buyer is unwilling to accept such title as the Seller can make, then at Buyer's option, the above payment or payments shall be returned to the Buyer, together with the reasonable expenses of examining the title and making survey, or the Buyer may prosecute any legal or equitable action to which the Buyer may be entitled. 6. Actual possession is to be given to the Buyer on October 20, 1955. 7. Taxes, water rents, interest on encumbrances, property rentals and other current charges shall be adjusted as of the date of settlement, unless possession be given prior thereto, in which case all such adjustments shall be made as of the date of delivery of possession. 8. The Seller shall pay for all revenue stamps on the deed, if any be necessary, but all searches, title insurance and other *61 conveyancing expenses are to be paid for by the Buyer. 9. This agreement includes all fixtures permanently attached to the building or buildings herein described, and appurtenances; also specifically includes the following items: 9A. Seller shall have the right to completely harvest all crops planted for the year 1954, & 1955, up to October 20, 1955. 9B. Seller shall have the right to remove all buildings and trees from the premises in question. 9C. Seller shall have the right to occupy and use the dwelling and all buildings up to October 20, 1955. 10. Buyer shall have the right at any time or times prior to settlement to enter upon the premises for the purpose of making test borings or test excavations, or any other work of a similar nature, provided, however, that in such event Buyer shall reimburse Seller for any damage that may be thereby inflicted upon the crops or other installations of the Seller. 11. Seller shall pay real estate commission of $10,000.00. The words "SELLER" and "BUYER" in this agreement shall be construed to mean both the plural and singular number and to mean not only the party thereby designated, but also his, her or their respective heirs, *62 executors or administrators; or in event that either or both parties are corporations, its or their successors. This agreement may be assigned by the Buyer. IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals dated the day and year first above written. Signed, Sealed and Delivered in the Presence of /s/ ALEXANDER DENBO, ALEXANDER DENBO /s/ ROBERT J. STUART (L.S.), ROBERT J. STUART /s/ EMMA R. STUART (L.S.), EMMA R. STUART /s/ ROBERT G. BLOOMER (L.S.), ROBERT G. BLOOMER Prior to execution of the April 21, 1954, contract and during negotiations leading to its execution it had been agreed that payments would be made in a manner and at times other than as indicated in the executed contract. Petitioners were not represented by counsel at the execution thereof and did not realize at that time that the payments called for were other than those previously agreed upon. Thereafter, but before the settlement date designated in the contract, petitioners agreed in writing with Levitt & Sons, Inc., through the latter's agent that after the payments in 1954, totaling $15,000, had been made the balance of $135,000 would be paid $75,000 on April 26, 1955, and *63 a purchase money mortgage would be executed by the purchaser in the face amount of $50,000, payable $20,000 on April 1, 1956, and $30,000 on April 1, 1957, with interest at 5 per cent on the unpaid balance. [1] Petitioners actually received $15,000 in 1954, $85,000 in 1955, $20,000 in 1956, and $30,000 in 1957. At the opening of the negotiations between petitioners and Levitt & Sons, Inc., petitioners insisted upon a sales price of $175,000. However, they were advised by an attorney who was acting as the purchaser's agent that if they would agree upon an acceptable lesser price and would spread the payments thereon over a greater period than one year and did not receive during the year of the sale more than 30 per cent of the total purchase price, a substantial saving of tax upon *64 the gain realized could be effectuated. In view of this advice petitioners reduced their demand to $150,000 to be paid in such manner that the tax saving would be forthcoming. The purchaser, because it was financing the purchase amount through a lender, was in accord with petitioners' desires in this respect because of the incidental saving of interest. During 1954, shortly following the execution of the April 21 agreement, the purchaser began to make and continued thereafter to make full use of the land in accordance with the contract terms. Petitioners continued to live in the dwelling located upon the land until May of 1956 although they began searching for another dwelling during May of 1954. Settlement was made and title to the land transferred more than a year prior to May of 1956. Ultimate Finding Petitioners made a sale or other disposition of their farm land within the meaning of section 453(b) of the Internal Revenue Code of 1954 on April 21, 1954, and during that year received less than 30 per cent of the total sales price thereof. Opinion Our ultimate finding is dispositive of this controversy because the only unresolved issue between the *65 parties is whether the sale or other disposition of petitioners' realty took place in 1954 at the execution of the April 21 agreement as petitioners contend or in 1955 at the date of settlement when title to the realty was transferred to the purchaser as respondent contends. Respondent's position is premised largely on the rationale of A.R.R. 13, 2 C.B. 78; American Land & Inv. Co. v. Commissioner, 40 F. 2d 336 (C.A. 4), affirming 14 B.T.A. 615; and Ralph A. Boatman, 32 T.C. 1188. We find none of the above-cited authorities to be in point. In each instance the issue involved is other than that which is before us. In each instance the issue had to do with the general legal definition of a sale, not with the question whether a given transaction constitutes a "sale or other disposition" of property within section 453(a) and (b), I.R.C. 1954. [2]
*66 For purposes of this case the cited section of the 1954 Code is virtually the same as the corresponding section 44 of the 1939 Code and pertinent authority with respect to the latter is of equal weight with respect to section 453(b) of the 1954 Code. The issue here presented has been considered by this Court and others usually in instances where respondent was the proponent of the proposition that for installment sale purposes "sale or other disposition" occurs at the time of execution of an agreement to sell property rather than at the date of transfer of title. Charles J. Derbes, 24 B.T.A. 276, affd. 69 F. 2d 788 (C.A. 5), certiorari denied 293 U.S. 580; Grace Harbor Lumber Co., 14 B.T.A. 996; Birdneck Realty Corporation, 25 B.T.A. 1084. In the case before us there was clearly a binding agreement on April 21, 1954, between the respective parties to buy and sell real property. So binding was the agreement that it was necessary that the buyer be relieved by paragraph 3 of the agreement of the obligation to specifically perform thereunder in consideration of the payment of $15,000 liquidated damages. By the agreement *67 petitioners immediately disposed of all of the incidents of ownership in their land and the right of the purchaser to exercise the incidents of ownership thereafter was absolute with the exception that petitioners were permitted to occupy the dwelling thereon for a fixed period and that legal title was not to pass until the settlement date. See Wiseman v. Scruggs, - F. 2d - (C.A. 10, Aug. 13, 1960). Petitioners did not, as respondent argues, sell the growing crops upon the land, the timber or buildings thereon. Their right to such property is clearly retained under paragraphs 9A and 9B of the April 21, 1954, agreement. It follows that respondent's arguments are based upon a misconstruction of that instrument. Mathematical computation establishes that less than 30 per cent of the total purchase price of the land was received by petitioners in the year of the sale or other disposition of their land and it is stipulated that the balance was paid to them in three installments, paid respectively in the ensuing three years. This is all that section 453(b) requires in order that petitioners might elect, as they did, to report the sale of their farm land upon the installment basis. *68 Decision will be entered for the petitioners. Footnotes
1. Although the record is by no means clear regarding the $10,000 difference between the agreed purchase price of $150,000 and total of the payments made under both agreements aggregating $140,000, we assume the difference is accounted for by commissions paid by petitioners because it is stipulated that they actually received $85,000 in 1955 rather than the $75,000 called for by the latter agreement.↩
2. SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property. - Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price. (b) Sales of Realty and Casual Sales of Personalty. - (1) General Rule. - Income from - (A) a sale or other disposition of real property, * * *
may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitations. - Paragraph (1) shall apply - (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition - * * *
(ii) The payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. * * *↩