**Josephine R. BINNS, Individually, and Josephine R. Binns, Executrix of the Estate of Douglas W. Binns**

v.

**UNITED STATES of America.**

**Josephine R. BINNS, Trustee under Trust Agreement of Douglas W. Binns**

v.

**UNITED STATES of America.**

**Civ. Nos. 3074, 3075.**

United States District Court
M. D. Tennessee,
Nashville Division.

March 21, 1966.

John J. Hooker, K. Harlan Dodson, Hooker, Keeble, Dodson & Harris, J. P. Foster, E. J. Walsh, Nashville, Tenn., for plaintiff.

Gilbert Merritt, Jr., U. S. Atty., Nashville, Tenn., J. W. Watkins, III, U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## MEMORANDUM

GRAY, District Judge.

These actions were initiated by the plaintiffs to recover income taxes paid by them after assessment by the District Director of Internal Revenue. Mrs. Josephine R. Binns was the widow of Douglas W. Binns, who died in March, 1956. She was Executrix of his will. Under this will 22,783 shares of the common stock of Phillips & Buttorff Company became the property of plaintiffs, Mrs. Binns individually acquiring a part thereof and the remaining portion being acquired by Mrs. Binns as Trustee of the Douglas W. Binns Trust, which Trust had been previously established.

As Executrix, Mrs. Binns decided that it was advisable to sell this stock. For this purpose she appointed Mr. E. J. Walsh, an attorney of Nashville, who was acting as attorney for the estate, as agent. There was considerable interest in this large block of stock which, although not a majority, was the largest

---

single block of stock in the company. Mr. Walsh negotiated with at least two prospective buyers, one of whom offered a price of $43 per share for 26,000 shares. Mr. Walsh was able to find other owners who were willing to sell at this price, and was able to put together the block of 26,000 shares required by the prospective purchasers. On June 6, 1956, the following instrument was executed by the parties as shown:

"June 6, 1956

"Mr. E. J. Walsh, Agent:

"We are buying from you 26,000 shares of Phillips and Buttorff Co. stock at $43.00 per share plus dividends declared and payable prior to August 1, 1956, dividends not to exceed 60 cents per share.

"As down payment on this stock, we are inclosing checks aggregating $75,-000.00; balance of payment is to be completed Friday June 15 at the Commerce Union Bank. Stock is to be placed in escrow at Commerce Union Bank in the morning, indorsed in blank.

"George C. Wilkinson
"Lowell Walker
"Accepted by E. J. Walsh, Agent.

"Accepted and approved by
"Josephine R. Binns, Executrix, Estate of Douglas W. Binns"

In accordance with the provisions thereof, the purchasers paid the sum of $75,000, and the stock was delivered in escrow to the bank as agreed. On or before June 15, 1956, on which the balance of the purchase price was to be paid, Mr. Walsh was advised that the prospective purchasers had been unable to complete financing plans which they had anticipated, and that they would not be able to pay the balance remaining. On that date one of the purchasers, Lowell Walker, wrote Mr. Walsh as follows:

"June 15, 1956

"Mr. E. J. Walsh, Agent:

"Reference is made to purchase agreement dated June 6, 1956 for 26000 shares of Phillips and Buttorff stock signed by George C. Wilkinson and Lowell Walker, the undersigned.

"In the event, we as buyers, are unable, due to circumstances beyond our control to complete this transaction, it is requested you accept the $75,000.00 down payment as forfeited and release George C. Wilkinson and Lowell Walker from any further liability in this matter.

"Respectfully yours,
"Lowell Walker          "

Also on June 15, 1956, the other purchaser, George C. Wilkinson, telegraphed Mr. Walsh as follows:

"UPON CONDITION OF OUR RELEASE FROM ARMY DEFECIENCY CLAIM UNDER OUR CONTRACT OF PURCHASE OF JUNE 6TH 1956 I AGREE WITH WALKER TO FORFEIT ALL INTEREST IN THE DOWN PAYMENT AND THE STOCK=

GEORGE C WILKINSON="

Mrs. Binns and Mr. Walsh agreed to release the purchasers from further liability and accepted the down payment. As above noted, all of the 26,000 shares did not belong to the plaintiffs, and it is agreed that their share of the $75,000 amounted to $65,676.32. Subsequently, the stock belonging to plaintiffs was sold at a lower price. In preparing an estate tax return for the Binns' estate, the value of the stock was shown as the total of the price received from the subsequent purchaser and the down payment forfeited by Wilkinson and Walker.

Subsequently, the Director of Internal Revenue determined that the down payment forfeited, less a credit of $2,826.93, should be considered as income received during 1956. Accordingly, assessments were made on the plaintiffs in accordance with their respective interests, the taxes were paid, and these suits resulted.

Plaintiffs insist that these two transactions really constituted but one sale, that no income was realized from the first transaction, and that the amount of money received as a result thereof was

really but a part of the sale price for the stock. With this contention, the court is unable to agree.

It seems clear that, if the original sales contract had contained a provision that failure to pay the balance of the purchase price as agreed would result in the return of the stock to the sellers and that the down payment would be forfeited as liquidated damages discharging purchasers from further liability, no supportable argument could be made that such sum in lieu of liquidated damages did not constitute income to the sellers. Johnson v. Commissioner, 32 B.T.A. 156 (1935), Boatman v. Commissioner, 32 T. C. 1188 (1959). In both of the cited cases the question involved was whether the liquidated damages received by the sellers constituted ordinary income or was a capital gain resulting from a sale or exchange. In both cases it was held that the payments were not made as a result of the disposition of a capital asset, that after the payments were made the sellers had exactly the same capital assets as before the transaction was entered into, and that therefore the income was ordinary income.

In *Boatman* the Tax Court said, at page 1191, "While a vendor of real estate, in case of default by the vendee, can elect one of several remedies, it is quite obvious that the vendor in this case accepted the $12,000 as liquidated damages which was his right under the contract. Such liquidated damages are taxable as ordinary income." The same situation obtains here. The sellers could have pursued their remedies under Tennessee law; instead, they elected to accept the proposal of the purchasers.

In the instant case, there was no provision in the contract for forfeiture or liquidated damages. However, the proposals made on June 15, 1956, by the purchasers and the acceptance of those proposals constituted merely an amendment of the original contract to make such a provision. After the forfeiture of the down payment and the release of the purchasers by the sellers from further liability, the purchasers had no further interest in the stock. The sellers had exactly the same capital assets they had prior to the execution of the sales contract on June 6, 1956. There was no sale involved in this transaction, and the fact that the subsequent sale of the stock was at a lower price cannot affect this conclusion.

In passing, it should be pointed out that it is entirely possible that all of this litigation may be due to the faulty language used by the Internal Revenue Service when it made the determination that the forfeited down payment was income. In making that determination it found that this payment to the plaintiffs was payment for a lapsed option. Obviously there was no option given by Mrs. Binns to Walker and Wilkinson. The original instrument was an executory contract of sale and bore no resemblance to a contract granting an option. Therefore, in upholding the determination of the Internal Revenue Service that income was received by plaintiffs in the transaction, the court specifically holds that the item in controversy was not the payment for a lapsed option but a forfeiture in lieu of damages for failure to consummate a contract of sale.

In view of the disposition here made, the court does not find it necessary to consider defenses interposed as to certain small portions of the sums sought to be recovered, to the effect that the claims for refund as to such sums were not filed within two years of the dates of payment.

The clerk will enter judgment as provided by Rule 58, Federal Rules of Civil Procedure.