E. F. BAERTSCHI AND ALMA M. BAERTSCHI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2186–66.    Filed December 29, 1967.

*James F. Kennedy, Jr.*, for the petitioners.
*Robert T. Hollohan*, for the respondent.

---

OPINION

The issue for determination is whether petitioners are entitled to utilize the nonrecognition provisions of section 1034, with respect to the sale of their old residence. Section 1034 provides, in part, as follows:

SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

\* \* \* \* \* \* \*

(c) RULES FOR APPLICATION OF SECTION.—For purposes of this section:

\* \* \* \* \* \* \*

(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of one year after the date of the sale of the old residence, the period specified in subsection (a), and the 1 year referred to in paragraph (4) of this subsection, shall be treated as including a period of 18 months beginning with the date of the sale of the old residence.

In order to qualify for nonrecognition treatment, therefore, petitioners must show (1) that construction of the new residence was commenced before the expiration of 1 year after the date of sale of the old residence and (2) that the newly constructed residence was used by them as their principal residence within 18 months after the date of sale.

The facts of this case are (1) that construction of the new residence began on December 9, 1963, and (2) that use of the new residence began on September 16, 1964. The parties are in dispute as to the date on which the sale took place. Petitioners contend that the sale occurred on May 31, 1963, the date of the final payment and the execution and transfer of legal title. Respondent contends that the date of sale is either the date of the agreement, October 15, 1962, or sometime during December of 1962 when Stollman and Ross, having made the second payment called for by the agreement, had the right to begin operations on the land.

When the sale took place is a question to be determined from a consideration of all the relevant circumstances. The material facts, however, are not in dispute and the crux of the problem presented is the effect of the agreement of the parties dated October 15, 1962.

The agreement, set forth in detail in our findings, provided in general that petitioners were bound to sell to Stollman and Ross on full payment of the purchase price. Petitioners, however, did not have the enforceable right to receive the full purchase price. In the event of nonpayment, petitioners had the option either to declare the entire balance due and payable and enforce their vendor's lien for payment thereof or to rescind the contract and retain all payments and improvements made on the land as liquidated damages. Both alternatives, however, were subject to the condition that any recovery was limited solely to the moneys paid and the value of the property and that petitioners possessed no right against Stollman and Ross in excess of that limit.

We are of the opinion that this agreement did not constitute a sale of the property on October 15, 1962.

The words "sale" or "exchange" as used in the Internal Revenue Code must be given their ordinary meanings. * * * " 'A sale, in the ordinary sense of the word is a transfer of property for a fixed price in money or its equivalent.' * * *" [*Ralph A. Boatman*, 32 T.C. 1188, 1191–1192 (1959)]

In *Commissioner* v. *Union Pac. R. Co.*, 86 F. 2d 637, 639 (C.A. 2, 1936), affirming 32 B.T.A. 383 (1935), the Court of Appeals summarized the applicable rule as follows:

A closed transaction for tax purposes results from a contract of sale *which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration* and by which the purchaser secures immediate possession and exercises all the rights of ownership. The delivery of the deed may be postponed and payment of part of the purchase price may be deferred by installment payments; but for taxing purposes it is enough *if the vendor obtains under the contract the unqualified right to recover the consideration.* * * * [Emphasis supplied.]

In the case at bar, the vendors did not receive an unqualified right to recover the consideration. The contract in the fourth paragraph specifically provided that in the event of the buyers' default the sellers'

recourse was limited solely to the moneys paid and the property itself. Applying the facts of this case to the rule set forth above, we are convinced that no sale took place at the date the agreement was signed.[4]

On brief, respondent argues that the limitation on the sellers' rights in the event of a breach by the buyers is contradictory to the contract provision which entitled the sellers to declare the balance of the purchase price due and payable and enforce their vendor's lien for the payment thereof and, therefore, the limitation should be ignored. We cannot agree. This right and the limitation thereon are both contained in the fourth paragraph of the contract and the latter in our opinion is merely explanatory of the former. They are not provisions which require the acceptance of the one and the rejection of the other as suggested by the respondent. We also disagree with respondent's further argument which relies on this premise, namely, that under Ohio law the seller would be entitled to specific performance as against the buyer and that, therefore, we should treat the transaction as closed. Cf. *Commissioner* v. *Stuart*, 300 F. 2d 872 (C.A. 3, 1962). We note that the contract herein was made at arm's length and the limitation provision was a matter of specific negotiation between the parties. In fact, the provision was included at the insistence of the buyers and over the objection of the sellers. To state that such a provision is null and void and to allow the seller to succeed in an action for the full purchase price is to do violence to the intent of the parties and in effect to rewrite their agreement. This we cannot do and we are not persuaded that under State law such a specific intention, manifested by the parties, would be ignored. In short, we are of the opinion that the parties intended that no sale would occur until full payment was made by the buyer. See *Smith* v. *Loewenstein*, 50 Ohio St. 346, 34 N.E. 159, 161 (1923), in which the court stated that—

> To what extent a conversion takes place * * * must be determined by looking to the contract or instrument as indicating the intention of parties. * * *

Respondent next argues that the sale occurred no later than December 31, 1962, since by that date the purchasers had the right to begin excavating and to begin construction of the shopping center. They also had the right to raze the house though they did not, in fact, do so prior to the date of final payment. They also had the duty to insure the property and to pay the realty taxes. He concludes that they therefore had assumed the benefits and burdens of ownership of the property at least by that date. He concludes that the sale therefore occurred at that time, relying on *Commissioner* v. *Union Pac. R. Co.*, *supra; Elsinore Cattle Co.*, a Memorandum Opinion of this Court dated Feb. 21, 1950,

---

[4] This case is distinguishable from the situation in *William B. Cusack*, 48 T.C. 156 (1967), wherein we held that an option granted to the buyer to reconvey the property in exchange for a return of all consideration paid in the event the seller failed to supply either water service or a right-of-way did not prevent the sale from being a completed transaction.

and *Ted F. Merrill*, 40 T.C. 66 (1963), affirmed per curiam 336 F. 2d 771 (C.A. 9, 1964). Respondent in so arguing misinterprets the benefits-and-burdens test. In each of the above cases the respective courts dealt with a "closed transaction," that is, one in which, *inter alia*, the seller's right to the purchase price is unconditional. We do not believe that these cases are applicable to a situation like the one before us in which the seller has no such unconditional right.

We therefore hold that the sale occurred on May 31, 1963, the date of the final payment and that, therefore, on the facts of this case petitioners are entitled to utilize the nonrecognition provisions of section 1034 with respect to the sale.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, concurs in the result.

---

DRENNEN, *J.*, dissenting: I cannot agree that solely because petitioner may not have had the unqualified right to recover the entire balance of the cash consideration to be paid for the property that this transaction did not become a sale of the old residence for purposes of section 1034 until the balance of the cash consideration was actually paid. Section 1034 is a relief provision which permits a taxpayer to postpone recognition of gain on the sale of property used by him as his principal residence if he reinvests the proceeds from the sale of the old residence in a new residence within the time specified. It should be applied with the congressional purpose in mind.

It seems clear to me that not later than December 31, 1962, petitioners had given up the use and possession of their old residence, the purchasers had acquired possession of the property with the right to raze or remove the house and had assumed all of the benefits and burdens of ownership, and that the parties intended ownership of the property to pass prior to that date. See *Ted F. Merrill*, 40 T.C. 66. Petitioners were by that time unconditionally bound to deliver a deed to the purchasers upon payment of the purchase price. Delivery of the deed and payment of all installments of the purchase price did not defer consummation of the transaction. I disagree with the majority's emphasis on the absence of personal liability on the part of the purchaser. Sales often occur where, in the event of default, the seller's recourse is limited to the property itself. I think that for purposes of section 1034 the sale of the old *residence* occurred not later than December 31, 1962, and consequently petitioners are not entitled to the nonrecognition benefits provided in that section.

If the rationale of the majority opinion is to be applied in all instances, a taxpayer, by selling his residence under a contract of sale containing the same recourse provision as the contract here involved,

but with the consideration to be paid in installments over an extended period of time, could extend the period within which he could reinvest the proceeds of sale and defer recognition of gain on the sale far beyond the period contemplated in the statute and make the statute meaningless.

TIETJENS, RAUM, TANNENWALD, and SIMPSON, *JJ.*, agree with this dissent.